People *v.* Reynolds.

## PEOPLE *v.* REYNOLDS.

A CHALLENGE for implied bias, in criminal cases, must specify the particular cause of bias. It is not enough to say, "I challenge the juror for implied bias."

It is proper practice to examine a juror on his *voir dire*, generally, as to his qualifications, with the view to obtain information upon which to rest a specific challenge. Immediately after such preliminary examination is closed, the challenge should be made, distinctly stating the causes. The District Attorney can then except to the challenge, or deny the facts it alleges; that is, he can demur to its sufficiency, or join issue on the truth of its averments. If the latter course be adopted, the juror can be further examined, other witnesses called, and the matter then submitted to the Court.

The allowance of a peremptory challenge, in criminal cases, after the juror has been accepted and sworn, is not matter of right, but may be permitted for good cause.

That a juror was formerly connected with the Police Department of San Francisco, and had, generally, an unfavorable opinion of persons accused of crime, is no disqualification.

In criminal cases, jurors may be sworn in chief, as they are accepted, or the administration of the oath may be delayed until the panel is completed. In either case, the defendant must exercise his right of peremptory challenge before the juror is sworn.

In criminal cases, the test, under our statute, of the exclusion of a juror for *implied bias* is, that he has *formed or expressed* an *unqualified* opinion or belief in the guilt or innocence of the accused. To exclude the juror, he must have a settled conviction of the guilt or innocence of the party, or must have *expressed* such conviction.

The terms "unqualified opinion or belief" were used to define the nature of the opinion or belief formed or expressed; to distinguish between a mere hypothetical opinion, or a mere casual impression, and a decided or fixed opinion.

That a juror has read or heard a statement of the facts of a case, does not, of itself, disqualify him, under the statute; for he may not have formed or expressed "an unqualified opinion." A mere impression or suspicion derived from such reading or hearing does not disqualify. The juror must have reached a *conclusion* like that upon which he would be willing to act in ordinary matters.

The "unqualified opinion" intended by the statute, usually involves a *belief in the facts*, as well as a conclusion from them; and although a juror may, from reading or hearing a statement of the facts, draw an inference from it which amounts to an opinion, still, if this influence or opinion be conditional or qualified—for example, if it depend upon the facts turning out as stated in the account read or heard—the juror is not, as matter of law, disqualified on an *exception for implied bias.*

In such case the juror *might*, under some circumstances, be excluded for *actual bias;* for instance, where a case depended upon circumstances not in themselves conclusive, if a juror had an opinion which gave conclusive force to one or more of such circumstances, it *might* show that actual bias which would preclude him from fairly trying the issue.

On exception for *actual bias*, the triers have the right to reject a juror on a certain state of facts, if they think he will not act with entire impartiality, even though he be not disqualified, as a conclusion of law, from such facts. They have an enlarged, though not an arbitrary discretion in the matter. They should examine the juror fully, and are governed by no inflexible rules. They must judge by what they can discover, of the qualities, state of mind, motives, and relations of the *particular juror*, and from their judgment there is no appeal.

The statute makes the expression of an unqualified opinion, *in law*, bias, which cause, of itself, excludes the juror; but the expression of a less decided opinion, though it does not, *as matter of law*, exclude him, may be sufficient in itself, or in connection with other proof, to exclude him, if, in the judgment

of the triers, from what they can discover of the character of the juror, this expression or these other circumstances would render him not entirely impartial.

APPEAL from the Fourth District.

No statement of facts is required.    Defendant appeals.

*Geo. W. Tyler,* for Appellant.

*Thos. H. Williams, Attorney General, and Harvey S. Brown, District Attorney,* for Respondent.

BALDWIN, J. delivered the opinion of the Court—FIELD, C. J. concurring.

The defendant was indicted for murder, and was convicted of the crime in the second degree.    The case comes before us on exceptions taken in the impanneling of the trial jury: First, to the disallowance of challenges for implied bias interposed to two of the jurors; Second, to the refusal to allow a peremptory challenge to one of the jurors after he was accepted and sworn; and Third, to the ruling of the Court requiring a juror to be sworn in chief and the defendant to exercise his right of peremptory challenge before the completion of the panel.

1. The statute enumerates several distinct causes for which a challenge for implied bias may be taken, and requires, in a challenge of this kind, that one or more of the causes thus enumerated shall be alleged. (Act regulating proceedings in criminal cases, secs. 347, 349.)    Unless the cause be alleged, the challenge may be disregarded by the Court. It is not enough to say: "I challenge the juror for implied bias," and then stop.    The particular cause from which such bias is to be inferred must be stated.    Such was the rule of the common law, and such is the direction of the statute in this State.    In the present case, the challenges were interposed in general terms—"for implied bias"—without a specification of the particular causes; and for this reason, if for no other, they were properly disallowed.    "When a juror is challenged for principal cause or for favor," says the Supreme Court of New York, in *Freeman* v. *The People,* (4 Denio, 31) "the ground of the challenge should be distinctly stated; for without this the challenge is incomplete, and may be wholly disregarded by the Court.    It is not enough to say: 'I challenge for principal cause or for favor,' and stop there; the cause of the challenge must be specified."

People *v.* Reynolds.

"A party cannot," says the Supreme Court of New Jersey, in *Mann* v. *Glover*, (2 Green. 195) "make a principal challenge, or a challenge to the favor, by giving it a name. A challenge, whether in writing or by parol, must be in such terms that the Court can see, in the first place, whether it is for principal cause or to the favor, and so determine by which forum it is to be tried; and secondly, whether the facts, if true, are sufficient to support such challenge."

It is the common practice in this State to interrogate a juror, when he is first called upon his *voir dire*, generally as to his qualifications, with a view to obtain information upon which to rest a specific challenge. This practice, though productive of some inconvenience, is one of necessity; for, unless it be followed, it will often be quite impossible to ascertain the qualifications of the juror. In some of the counties of the State the population is constantly changing, and it often happens, when a special jury is called after the regular panel is exhausted, that all the jurors summoned are unknown to the counsel of either party and to the officers of the Court. If, therefore, the challenge for implied bias be not taken before the juror is examined, the proper course to pursue is to make the challenge, stating distinctly its causes, immediately after the preliminary examination is closed. The District Attorney can then except to the challenge, or deny the facts it alleges; that is, he can demur to its sufficiency, or join issue on the truth of its averments. If the latter course be adopted, the juror can be further examined, and other witnesses called, and the matter be thus submitted to the Court.

In the present case, the challenges were overruled, but whether on the ground of their insufficiency in form, or because unsupported by the evidence, does not appear. It is enough if the ruling can be sustained on either of the grounds.

2. The allowance of a peremptory challenge after a juror has been accepted and sworn, is not a matter of right. It may be permitted, says the statute, "for good cause." (Act concerning Criminal Proceedings, sec. 341.) No such good cause was shown in the present case. The former connection of the juror with the police department of San Francisco, and his general unfavorable opinion of parties accused of crime, constituted no disqualification. It was not pretended that he had formed or expressed any opinion of the guilt of the defendant, or was cognizant of any of the circumstances connected with the homicide.

3. The statute contemplates that jurors in criminal cases may be sworn in chief, as they are accepted, without waiting for the completion

of the panel. This is evident from the three hundred and forty-first section of the Act regulating proceedings in Criminal Cases, which provides that a challenge to an individual juror, whether peremptory or for cause, must be taken when the juror appears, and before he is sworn, but the Court may for good cause permit it to be taken *after the juror is sworn and before the jury is completed.* The jurors may be sworn as they are accepted, or the administration of the oath may be delayed until the panel is completed. Either mode may be adopted, and in either case the defendant must exercise his right of peremptory challenge before the jury is sworn.

These views dispose of the present case; but we are asked, as a matter of public interest, and as the questions are presented in the record, to lay down some rules in regard to challenges and selections of jurors in criminal cases.

Among the causes of *implied bias* is, the having formed or expressed an unqualified opinion or belief that the prisoner is guilty, or is not guilty, of the offense charged. (Wood's Dig. 296, sec. 347.) Upon no one question of civil or criminal practice have the decisions of Courts been more inharmonious than upon this question of qualification or disqualification of jurors, arising from the formation or expression of opinion of the guilt or innocence of the accused. We are relieved to some extent of the task of determining the question upon its original merits, for our statute was designed to fix a rule upon the subject. It makes the formation or expression of an unqualified opinion or belief a ground of exception to the juror for *implied bias.* The only difficulty is to fix the meaning of these terms, "unqualified opinion or belief." Evidently, these terms were used to define the nature of the opinion or belief formed or expressed; to distinguish between a mere hypothetical opinion or a mere casual impression, and a decided or fixed opinion. The language implies that, to exclude the juror, he must have a settled conviction of the guilt or innocence of the party, *or has expressed* such a conviction. It does not seem to be indispensable, under this section, that the juror has had the usual or any means, or opportunities, of arriving at a correct or intelligent opinion upon the subject, *if he has formed it, or if he has expressed it.* Minds are so differently constituted that some men form opinions, and very obstinately adhere to them, upon slender and insufficient grounds, while others are undecided when sufficient reasons exist for forming them. The statute fixes a standard of its own by which impartiality is approximated as nearly as possible con-

sistently with the effective administration of criminal law. It has declared a test of exclusion for implied bias to be, that the juror has *formed or expressed* "an *unqualified* opinion." We must hold this rule in its simplicity, neither subtracting from it, nor adding anything to its requirements. If, for example, the juror has read or heard a statement of the facts of a case, *this* does not, of itself, under this section, disqualify him, for it does not follow that he has either formed or expressed "an unqualified opinion." He may not have formed any opinion at all, certainly, not an unqualified one. He may have received an impression, but this impression is not enough to disqualify him. A mere suspicion or inclination of the mind towards a conclusion is not enough; the state of mind must be more decided. He must have reached a *conclusion* like that upon which he would be willing to act in ordinary matters. In others words, we repeat, the effect upon his mind must be more than an impression; it must amount to a conviction, in order to exclude him for *implied bias.*

It is evident that the unqualified opinion spoken of usually involves a belief in the facts, as well as a conclusion from them. The mere fact that a person hears or reads a statement, especially an *ex parte* statement, does not imply that he believes it, or recognizes it as true, though he may draw an inference from it which may amount to an opinion; but if this inference or opinion be conditional or qualified—for example, if it depends upon the facts turning out as stated in the account read or heard—this would not, as a matter of law, disqualify the juror *on exception for implied bias.* It *might* be sufficient, under some circumstances, to exclude him for *actual bias;* for instance, a case might depend upon circumstances not in themselves conclusive; and an opinion by a juror assigning conclusive force to one or more of such circumstances, *might* show that actual bias which precludes him from fairly trying the issue. And many other cases might be given which illustrate the same distinction.

We are fortified in this conclusion by the care and particularity with which all the causes of challenge for implied bias—eight in number—are set out in the three hundred and forty-seventh section. The trial, after exception, for implied bias, is by the Court, (sec. 356) and there should be no great difficulty in determining whether the juror is competent or not. He can say whether he has formed or has expressed an unqualified opinion or belief on the subject; whether what he has read or heard has fixed upon his mind a conviction of the guilt or innocence

of the accused.   The shades of distinction between opinion and impression may not always be easily discriminated, even by the juror himself; but the statute has drawn the distinction, and in a great majority of instances, the juror may be made to comprehend it.

The question of *actual bias* is necessarily more difficult of solution upon any general principles.   It is impossible to prescribe the particular instances which constitute grounds of challenge for this cause.   The statute thus defines it: " The existence of a state of mind on the part of the juror, in reference to the case, which, in the exercise of a sound discretion on the part of the trier, leads to the inference that he will not act with entire impartiality."   The ascertainment of this state of mind is left with the triers, and no appeal is given from their decision.   It does not follow because, as a conclusion of law, a juror is not disqualified by the existence of certain facts, that the triers may not reject him.

The statute makes the expression of an unqualified opinion, *in law* bias, which cause excludes of itself such juror ; but the expression of a less decided opinion does not, *as matter of law,* exclude the juror; but it may be sufficient of itself, or in connection with other proof, to exclude him, if, in the judgment of the triers, from what they can discover of the character of the juror, this expression or these other circumstances would render him not entirely impartial.   Less than this sort of expressed or formed opinion—for example, a mere hypothetical opinion is not a *rule* of exclusion, but *may be a cause*—the law, knowing the diversities of human character, refusing to assign to such an influence any determinate effect upon the conduct of all men, and yet refusing to hold that such an influence is necessarily without effect upon any man.   It leaves the effect of these and the like matters to be determined by those who are made the judges of the character of the particular juror examined. A self-conceited, weak man, with violent prejudices, expressing himself, however loosely, about a case, would not be a safe juror; while a man of sense and truthfulness might be safely trusted, though he had more strongly committed himself before being put in possession of the entire issue to be tried.   In other words, it is as if the Legislature said: " Some men, having formed or expressed an opinion loosely, or heard rumors, are so prejudiced that they cannot act impartially ; others can. We make no general rule on the subject, but appoint men who understand human nature and the law, whose business it is thoroughly to examine the jurors expressing such opinions or hearing such reports, and who shall decide whether the *particular men examined* will act with entire impartiality."

In the case of *The People* v. *Bodine*, (1 Denio, 307) the Supreme Court of New York say: " Challenges to the favor," as was observed by the late Judge Gaston, of North Carolina, " are where the matters shown do not, *per se*, demonstrate unindifference, and therefore warrant it as a judgment of the law, but only excite a suspicion thereof, and leave it as a matter of *fact* to be found or not found, by the triers, upon the evidence. And," he adds, " it seemeth to us that an opinion, fully made up and expressed, against either of the parties, on the subject matter of the cause to be tried, whether in civil or criminal cases, is a good cause of *principal* challenge; but that an opinion formed, or an opinion merely hypothetical—that is to say, founded on the supposition that facts are as they have been represented or assumed to be—do not constitute a cause of principal challenge, although they may be urged by way of challenge *to the favor*, which is to be allowed or disallowed, as the triers may find the *fact* of favor or indifferency." (*The State* v. *Benton*, 2 Dev. & B. 212, 213.)

The instances which have been stated, and the authorities referred to, are deemed sufficient to exemplify the saying of Lord Coke, that " the causes of favor are infinite," (Inst. 157, *b*) " and to mark and illustrate the principles applicable to this branch of the case. It must of course be understood, that no opinion is intended to be expressed, or even intimated, as to the sufficiency of any of the various grounds of challenge to the favor, which have been mentioned. That is for the triers alone to pass upon. These instances show what slight and indecisive evidence of bias is admissible; but after all, the influence and effect of what is proved, and how far it may have affected the mind of the juror, the good sense of the triers must determine:" and in *The People* v. *Honeyman* (3 Denio, 124) the Court say: " If we have not been sufficiently explicit already, recent events render it proper to add, that although evidence which tends to show a bias on the mind of the juror must be received, it by no means follows that the juror should be set aside by the triers for slight causes. If, for example, the juror has heard, or has read in a newspaper, that the prisoner is guilty of the crime laid to his charge, and has given credit to the statement, the evidence of these facts must be received, and the triers must not be instructed, as matter of law, that they are not at liberty to reject the juror. Still, it would not be a wise or judicious act on their part to set aside the juror, unless they found that he had such a settled opinion concerning the prisoner's guilt, that he could not disregard what he had read or heard out of

Court, and render his verdict on the evidence alone. We have never said anything, nor is there anything in the law of jury trials, which could often render it difficult to get a jury in any county, and in any case, without much loss of time. When we changed the venue last January, in the case of Mary Bodine, to the county of Orange, it was not because we thought an impartial jury could not be obtained in the city of New York, but because it was agreed by the counsel on both sides that it could not be done. It is well known that jury duty in the city of New York is somewhat burdensome; and persons summoned as jurors for a trial which is likely to occupy a good deal of time, will be very willing to say, if it can be done truly, that they have heard or read statements, and formed opinions, concerning the prisoner's guilt. But a little sifting would probably show, and well instructed triers would undoubtedly find, that they were not disqualified to sit as jurors. Intelligent and right-minded men, when they enter the jury box, know how to lay aside what they have heard and read out of doors, and pronounce their verdict upon the evidence, and upon that alone."

It will be perceived that the language of our statute is somewhat different from that of the New York act. The words give to the triers the right to reject the juror, if they think he will not act with entire impartiality. They have the right to examine him fully and carefully, and they should exercise this right with great freedom. Much must depend upon the character of the juror, as disclosed by his bearing, and upon his relations to the parties, and many other things, which it is impossible to specify; but the *desideratum* is, to secure a jury who will act impartially—with entire impartiality. And the delicate and responsible office of passing upon this question is left to the triers. They must look to the circumstances of each juror's case, for it is obvious, that an ignorant, obstinate man, showing, by his bearing and manner, prejudice and passion, would be much more apt to be influenced by improper or extraneous considerations than an intelligent man, whose demeanor evidenced moral elevation, and a frank, ingenuous temper. But the peculiar terms of this provision leave no doubt that the triers are trusted with an enlarged discretion upon this subject. Their finding is not to be absolutely determined by any inflexible rules. Their office seems to be that of an inquisition into the qualifications and character of the particular person offered as a juror, and to determine whether he comes up to the legal standard. The standard is given, it is true—a man "who will act with entire impartiality" as a juror in the given case. But the

'triers determine, in their discretion, whether the person canvassed fills this character. No invariable rules are prescribed as tests of this character. The triers must judge by what they can, in the exercise of their office, discover of the qualities, state of mind, motives and relations *of the particular juror*, and from this knowledge their judgment must be formed; and from that judgment there is no appeal. So various is human character, and so infinite the motives which actuate men, that it was thought best by the Legislature to leave the entire question to the arbitrament of these triers, without prescribing definite rules for their government, leaving the question of the competency of the juror " to their discretion "—not meaning by this, however, an arbitrary discretion, but a fair, legal judgment upon the facts of the particular case as they are presented on the examination. Whether this be the best mode of settling this vexed question, it is not for us to decide; it is enough to know that it is the mode prescribed by the law of the State.

Judgment affirmed.