## EL PUEBLO v. COLL.

Apelación procedente de la Corte de Distrito de Guayama.

No. 407.—Resuelto en mayo 9, 1912.

DERECHO PENAL—APELACIÓN—PLIEGO DE EXCEPCIONES—EXPOSICION DEL CASO—APROBACIÓN.—De acuerdo con el artículo 298 del Código de Enjuiciamiento Criminal, el juez que preside el juicio, o la Corte Suprema, únicamente tienen jurisdicción para aprobar el pliego de excepciones o la exposición del caso, para los efectos de una apelación.  Un juez en propiedad que sustituye al juez que presidió el juicio, carece de jurisdicción para aprobar dichos documentos.  Una exposición del caso o pliego de excepciones firmadas y aprobadas por el juez de distrito que no es el que presidió el juicio carecen de autenticidad y no surten efecto legal alguno en apelación.

ID.—APELACION—EXPOSICIÓN DEL CASO.—PLIEGO DE EXCEPCIONES—REGLAMENTO DEL TRIBUNAL SUPREMO.—El artículo 65 del Reglamento del Tribunal Supremo fué dictado para casos civiles y en materia criminal rige el artículo 298 del Código de Enjuiciamiento Criminal.

ID.—APELACIÓN—PLIEGO DE EXCEPCIONES NO AUTENTICADOS—RECUSACIONES DE JURADO—EXCLUSIÓN DE LA DECLARACIÓN DE UN TESTIGO.—Careciendo la exposición del caso y pliego de excepciones presentadas a los efectos de la apelación interpuesta, de la debida autenticidad por no estar firmados y aprobados dichos documentos por el juez que presidió el juicio, sino por el que le sucedió en el cargo, no puede este tribunal considerar los motivos del recurso fundados en la denegatoria de recusaciones de jurados y en la denegatoria de exclusión del récord de la declaración de un testigo.

ID.—APELACIÓN—EXPOSICIÓN DEL CASO Y PLIEGO DE EXCEPCIONES—IMPUGNACIÓN DEL FISCAL.—El hecho de que el pliego de excepciones y la exposición del caso hayan sido presentados al Tribunal Supremo, aprobados por un juez

que no presidió el juicio, sin impugnación alguna por parte del Fiscal y del
acusado, no obliga a esta corte a aceptarlos como legales ni a darles un valor
de que carecen.

Los hechos están expresados en la opinión.

Abogados del apelante: *Sres. F. Cervoni Gely y Herminio Díaz Navarro.*

Abogado del apelado: *Sr. Charles E. Foote, Fiscal.*

EL JUEZ PRESIDENTE SR. HERNÁNDEZ, emitió la opinión del tribunal.

Ante la Corte de Distrito de Guayama el Fiscal de dicha corte presentó en 3 de febrero del año 1911, acusación jurada contra Andrés Coll y Drós por delito de asesinato, consistente en que "el citado Andrés Coll y Drós el día 2 de febrero de 1911 y en la ciudad de Guayama del distrito judicial del mismo nombre, ilegal y voluntariamente, con malicia premeditada y propósito firme y deliberado y demostrando tener un corazón pervertido y maligno, dió muerte a Antonio Castillo Alvarez, haciéndole tres disparos de revólver e infiriéndole tres heridas de carácter grave que le produjeron la muerte, habiéndole acechado largo rato y atacádole alevosamente por la espalda."

El juicio del caso tuvo lugar ante la corte y un jurado en los días 28 y 29 de abril del año citado, y después de oídas las pruebas propuestas, las alegaciones de las partes y las instrucciones de la corte al jurado, éste pronunció su veredicto declarando al acusado culpable del delito de asesinato en segundo grado.

Antes de que la corte pronunciara sentencia le fué presentada por la representación del acusado petición de nuevo juicio, alegando que había cometido los siguientes errores durante la sustanciación del juicio:

A. Al denegar la recusación motivada del jurado Don Angel Pacheco, quien declaró repetidas veces saber que el acusado había cometido el hecho que se le imputaba y que tenía formada opinión acerca de la culpabilidad o inocencia del mismo.

B. Al hacer las siguientes manifestaciones, cuando negó a la defensa la recusación motivada del Sr. Pacheco: "Todos entendemos que el acusado fué el que cometió el hecho, pero la cuestión para los doce señores del jurado es, de qué manera cometió el hecho, si fué con malicia, las circunstancias y todo."

C. Al no admitir la recusación del jurado Don Federico Amadeo, a pesar de haber declarado este jurado más de una vez, que en caso de duda no daría el beneficio de ella al acusado, y a pesar de haber declarado también que tenía opinión formada acerca de la culpabilidad del acusado.

D. Al no admitir la recusación del jurado Jorge Grau, a pesar de la parcialidad manifiesta del mismo en contra del acusado.

E. Al no excluir del récord la declaración del testigo de cargo Manuel Ortiz, según había solicitado la defensa, por el fundamento de que tal declaración fué prestada sin habérsele tomado juramento al testigo, habiendo ordenado la corte que se le tomara juramento, bajo el cual expresó que lo que había declarado era la verdad, sin que se le examinara nuevamente, como debió hacerse para que en su caso pudiera ser responsable del delito de perjurio.

A la moción de nuevo juicio presentada por la defensa del acusado, recayó la siguiente resolución:

"La moción de nuevo juicio presentada por el abogado del acusado en este caso, se deniega por las siguientes razones: 1º. Porque la corte no considera que ha cometido error al denegar la recusación motivada del jurado Don Federico Amadeo. 2º. Porque tampoco considera la corte que ha cometido error alguno al negar la recusación motivada del jurado Angel Pacheco. 3º. Porque no considera que incurrió en error al no admitir la recusación del jurado Don Jorge Grau. 4º. Porque tampoco ha incurrido en error al permitir que el testigo de cargo Manuel Ortiz que había declarado sin prestar juramento, volviera de nuevo a la sala de la corte y prestara el juramento bajo el cual expresó que lo que había declarado

era la verdad, toda la verdad y nada mas que la verdad. Apa-
rece del récord que dicho testigo, por negligencia de alguien,
no prestó juramento juntamente con los demás testigos que
declararon en dicha causa, y que declaró sin estar bajo tal ju-
ramento; pero habiéndose llamado la atención de la corte so-
bre este hecho, antes de que el caso fuera sometido al jurado,
y considerando que la negligencia era subsanable, la corte
permitió al testigo que volviera de nuevo a la sala y prestara
el juramento de que se ha hecho referencia. Por lo tanto, y
no existiendo en el concepto del juez que suscribe otras razo-
nes para declarar con lugar la petición de nuevo juicio solici-
tada por el abogado del acusado en este caso, queda, como
queda dicho, declarada sin lugar dicha moción, debiendo com-
parecer el acusado en el día de mañana, 16 del actual mes de
mayo, para recibir sentencia sobre el fallo de convicción da-
do por el jurado. Guayama, 15 de mayo de 1911. H. P.
Leake, Juez del Distrito.''

Esa sentencia fué pronunciada en el día señalado al efecto,
y por ella fué condenado el acusado a la pena de reclusión per-
petua en el presidio, con trabajos forzados y las costas.

Con fecha 17 de mayo citado el abogado del acusado in-
terpuso recurso de apelación contra la sentencia y en 22 del
propio mes, contra la resolución declarando sin lugar la pe-
tición de nuevo juicio.

En el propio día 17 de mayo presentó la representación
del acusado moción a la corte para que se le concediera una
prórroga de veinte días a contar desde el día en que le fuera
entregado el récord de la causa por el taquígrafo, para pre-
sentar la exposición del caso en el recurso de apelación enta-
blado para ante esta Corte Suprema, contra la sentencia pro-
nunciada y contra la orden denegatoria de nuevo juicio. Esa
moción fué concedida otorgándose la prórroga solicitada por
orden del mismo día, firmada por H. P. Leake, Juez interino
del Distrito.

Ha venido en el récord un pliego de excepciones que no
aparece por quien fuera redactado, pues no lo firma abogado

alguno, y termina con las siguientes palabras: Aprobado.
H. M. Hutchison, Judge. Dicho pliego no tiene fecha.

También ha venido en el récord otro escrito de exposición
del caso firmado por Francisco Cervoni y Cay. Coll y Cuchí,
abogados del acusado, cuyo pliego termina con la siguiente
nota: Aprobado noviembre 17 de 1911. H. M. Hutchison,
Juez del Distrito.

Como se ve, tanto el pliego de excepciones como el de ex-
posición del caso han sido aprobados por el Juez de Distrito
de Guayama, H. M. Hutchison, el cual no intervino en el
juicio. Su nombramiento para Juez de la Corte de Distrito de
Guayama se hizo en 1°. de julio de 1911 para tener efecto en
1°. de septiembre del mismo año, y en esta misma fecha tomó
posesión del cargo.

Ahora bien, la representación del acusado apelante funda
su recurso en haberse denegado al acusado recusaciones de
jurados hechas con causa y en no haberse excluído del récord
la declaración del testigo Manuel Ortiz, quien la había presta-
do sin juramento, no habiendo sido examinado de nuevo bajo
juramento, pues para subsanar la falta se estimó bastante que
jurara que lo que había declarado era la verdad. En esos mis-
mos fundamentos se basaba la moción de nuevo juicio, que fué
denegada por la corte inferior.

Y nosotros preguntamos ¿podemos traer a examen legal
tales fundamentos del recurso, tomando por base el pliego de
excepciones y el de exposición del caso que obran en el récord,
y que han sido aprobados por un juez que no intervino en el
juicio?

A la anterior pregunta contestamos desde luego negativa-
mente.

El artículo 296 del Código de Enjuiciamiento Criminal es-
tablece que cualquiera de las partes podrá oponer excepciones
a la resolución de un tribunal o juez recaída en cuestiones de
derecho, entre otros motivos, por conceder o denegar una mo-
ción para que se proceda a un nuevo juicio, y el artículo 297

establece otros dos motivos de excepciones distintos de los cuatro que enumera el 296.

Para que las excepciones a que aluden ambos artículos puedan ser consideradas y resueltas en grado de apelación han de consignarse en un pliego de excepciones, que debe ser aprobado y firmado por el juez que conozca de la causa, según prescribe el artículo 298. Ese artículo concluye así: *Si el juez que presidiere el juicio cesare en el ejercicio de su cargo antes de presentarse o resolverse la declaración de excepciones, esto no será óbice para que resuelva dichas excepciones, y si dejare de hacerlo, podrá la parte irse en alzada a la Corte Suprema para que la resuelva, según lo prescrito en este artículo.*

El párrafo que dejamos transcrito no es la fiel expresión del texto inglés, que dice así: *"If the judge who presided at the trial ceases to hold office before the bill is tendered or settled, he may nevertheless settle such bill, or the party may, as provided in this section, apply to the Supreme Court to prove the same."* Y su traducción literal es la siguiente: "Si el juez que presidió el juicio cesa en su cargo antes de que el pliego de excepciones sea presentado o aprobado, puede, sin embargo, aprobar tal pliego, o la parte puede, según se dispone en esta sección, pedir a la Corte Suprema que lo apruebe."

Ante precepto tan terminante de la ley, el juez de Guayama, H. M. Hutchison, que aprobó el pliego de excepciones carecía de jurisdicción para hacerlo, pues esa jurisdicción solamente la concede la ley al juez que preside el juicio o a esta Corte Suprema, pero nunca al que sustituya a aquél.

Lo que dejamos dicho acerca del pliego de excepciones es aplicable al escrito de exposición del caso.

Entendemos que para justificar el proceder del Juez Hutchison de Guayama, no puede invocarse la sección 65 de nuestro reglamento que fué dictada para casos civiles y en ejercicio de la facultad que el artículo 219 del Código de Enjuiciamiento Civil reconoce a la Corte Suprema. En materia criminal debe regir el estatuto, que nosotros no podemos derogar ni modificar.

Y no se arguya que la orden denegatoria de nuevo juicio, forma parte del récord, y los hechos en ella consignados por el juez que presidió el juicio pueden servirnos de guía para discutir las excepciones alegadas, pues la ley previene terminantemente el modo y forma en que han de venir esas excepciones a nuestro conocimiento y las partes no son árbitras de alterar las reglas de procedimiento, que son de carácter público.

Ciertamente que los pliegos de excepciones y de exposición de hechos, aprobados por un juez que no presidió el juicio, han venido a nosotros sin impugnación alguna por parte del Fiscal y del acusado; pero esa falta de impugnación no puede obligarnos a que los aceptemos como legales, ni darles un valor de que carecen.

Los pliegos de excepciones y de exposición del caso deben aprobarse y firmarse por el juez. En el presente caso ha mediado aprobación judicial firmada, pero por un juez que carecía de jurisdicción para impartirla, y por tanto, es lo mismo que si tal formalidad no se hubiera llenado.

El pliego de excepciones y el escrito de exposición del caso que figuran en el récord no son documentos fehacientes, y por tanto no pueden servirnos de base para discutir los fundamentos del recurso.

Hemos examinado la acusación en relación con la sentencia, pues tampoco podemos examinar las instrucciones al jurado por no estar autenticadas con la firma del juez, y encontramos que la acusación es buena por contener todos los elementos integrantes del delito de asesinato en segundo grado, de que el jurado juzgó culpable al acusado, y que la pena impuesta se ajusta estrictamente a la ley.

Debe desestimarse el recurso y confirmarse la sentencia apelada.

*Confirmada.*

Juez concurrente: Sr. Aldrey; los Jueces Asociados, Sres. Wolf y del Toro, emitieron una opinión concurrente por separado.

Juez disidente: Sr. MacLeary.

OPINIÓN CONCURRENTE DE LOS JUECES ASOCIADOS SRES. WOLF Y
DEL TORO.

El Señor Juez del Toro y el que suscribe al par que concurrimos enteramente con la opinión de la corte, deseamos también expresar otras razones que tenemos para confirmar la sentencia. El alegado pliego de excepciones marcado "Approved" por el actual Juez de Guayama, contiene una recusación motivada, y la consiguiente excepción que se formuló, contra el jurado Amadeo, porque cuando fué preguntado acerca de que si surgiera una duda razonable sobre si el acusado era el que había hecho el disparo fatal, daría al acusado el beneficio de la duda razonable, respondió que no lo daría. El pliego, que es enteramente confuso, muestra entonces (aparentemente todo con referencia al mismo jurado), que el jurado insistió en esta actitud aun preguntado por el juez; pero el pliego también muestra que el juez hizo la observación de que el jurado había dicho que se encontraba en condiciones de dar un veredicto justo e imparcial en la causa. La recusación fué general y no se expresaron las razones en que se fundaba, y la jurisprudencia ha establecido que una recusación es insuficiente cuando no se especifican sus fundamentos. (*People* v. *Reynolds,* 16 Cal., 131; *Southern Pacific Co.* v. *Rauh,* 49 Fed. Rep., 701, y casos citados; *Robinson* v. *Territory,* 85 Pac., 451.) La falta de especificación es similar a la falta de objeción específica a la admisión o no admisión de evidencia. El derecho de objeción se considera renunciado si no se ejercita. (*Falero* v. *Falero,* 15 D. P. R., 118, 122; 16 D. P. R., 79; *El Pueblo* v. *Asencio,* 16 D. P. R., 355, 359.)

Además, no es suficiente recursar a un jurado porque ha formado una opinión fija sobre un hecho o circunstancia del caso. El jurado debe tener una opinión sobre la culpabilidad o la inocencia del acusado o parcialidad o prejuicio en contra del mismo. En un caso muy antiguo en New York la corte, por medio del Juez Beardsley, dijo: "Toda recusa-

ción motivada debe ser por alguna causa que implique absoluta parcialidad en contra o en pro del acusado, de tal manera mostrada que no dé lugar al ejercicio de la discreción de la corte." En el caso de *Lowenburg* v. *People*, 27 N. Y., 342, el Jurado Durant fué recusado motivadamente por el fundamento de que había formado o expresado una opinión con respecto a la culpabilidad o inocencia del acusado, pero todo lo más que se demostró en contra de su capacidad fué que había formado una opinión de que el acusado había matado a Hoffman, opinión que nunca había expresado. La corte prosigue diciendo: "Esta no fué una opinión con respecto a la culpabilidad o inocencia del acusado. El acusado pudo haber matado a Hoffman y aun así ser inocente de cualquier delito." La corte entonces discute la opinión del Señor Juez Beardsley y dice: "Dentro de esta regla, el fundamento para recusar a Durant no se probó. Antes de que pudiera decirse que quedó establecido, la prueba debió haber sido de que había formado y expresado una opinión con respecto a la culpabilidad o inocencia del acusado, o al menos que había formado tal opinión. Es claro que el tener una opinión de que el acusado ha hecho algún acto que necesariamente debe mostrarse, entre otros, para poderlo declarar culpable, no es tener una opinión de que el acusado es culpable de asesinato o de cualquier otro crimen." La misma cuestión ha sido discutida por Mr. Freeman en sus notas puestas al caso de *Smith* v. *Eames*, 36 Am. Dec., 530–531. El dice, revisando los casos: "Una opinión formada sobre uno o más de los hechos esenciales de una causa ciertamente no inhabilita a un jurado a menos que aparezca claramente que es de tal naturaleza que influya en el jurado al decidir por su veredicto la totalidad del caso. Así en un asesinato es incuestionablemente un hecho esencial que haya ocurrido una muerte ilegal, y sería absurdo decir que un jurado que creía o que conocía que el interfecto había sido matado, estaba inhabilitado para actuar como jurado aunque no tuviera for-

mada una opinión con respecto a la culpabilidad o in-cencia del acusado.''

En el caso de *Conatser* v. *State,* 80 Tenn., 446, la corte dijo: el acusado mató al interfecto con una azada en un camino en construcción en la presencia de un número de ciudadanos. Estos hechos no fueron nunca disputados. Ahora se ha sostenido y basándose en la necesidad más obvia, que un jurado no tiene necesariamente una opinión sobre la culpabilidad o la inocencia del acusado, cuando cree que una persona ha sido matada, y, además, que la persona que se está juzgando realizó la muerte, pero sin que le conste si el acto fué cometido en legítima defensa o fué meramente accidental. (*Lowenburg* v. *People, Supra.*)

En este caso que resolvemos la muerte fué pública, y todo el mundo en Guayama la conocía, como se demostró por los comentarios hechos por el juez y copiados en el pliego de excepciones. Nosotros creemos que el sentido y el efecto de las resoluciones de la corte que han sido impugnadas, aparecería mucho más claro del pliego, si este hubiera sido inspeccionado y corregido por el juez que intervino en la causa.

Del mismo modo se trató de revisar la orden de la corte resolviendo una moción para dejar dejar sin efecto la declaración del testigo Ortiz porque no había sido juramentado antes de declarar. Este alegado error sólo aparece consignado en la moción para nuevo juicio y en la decisión de la corte con respecto a la misma. Allí aparece que se llamó la atención de la corte al hecho de que Ortiz no había sido juramentado cuando lo fueron los otros testigos, que se le llamó nuevamente y entonces fué juramentado. Nada en los documentos que están ante nosotros demuestra si el testigo fué reexaminado después de juramentado. No se tomó objeción o excepción a la orden de la corte sobre el juramento del testigo. Tenemos en esto la misma opinión que hemos expuesto al discutir la necesidad de objeciones y excepciones específicas. La razón para ello es evidente en sí misma. La corte debe tener una oportunidad de corregir su error. Debe

haber un fin para todo litigio. Cuando un acusado se sienta silencioso y permite al testigo que sea juramentado sin formular objeción, renuncia su derecho a alegar el error que pudiera haberse cometido. Después que se ha permitido a los testigos que se retiren, el acusado no puede alegar como un error lo que ocurrió si silenciosamente lo permitió en el juicio. A esta conclusión se llega después de la consideración y revisión de casos contenida en el de *El Pueblo ex rel Niebuhr* v. *Mc Adoo,* 184 N. Y., 307. Si el acusado hubiera dicho a la corte que de este modo el testigo podía escapar de las ansiedades y penas de una persecución por perjurio, la corte, si se hubiera convencido de la verdad de la posición del acusado, o de otro modo, pudo haber permitido al testigo no sólo ser juramentado sino vuelto a examinar después del juramento. El error si lo hubo, fué abandonado. Una decisión específica a este efecto está contenida en el caso de *Southern Railway Company* v. *Ellis,* 51 Southeastern, 594. (Véase también, *Nesbitt* v. *Dallam,* 28 American Dec., 240–241.)

Es muy discutible, además, si el testigo Ortiz hubiera declarado falsamente, que él pudiera resistir con éxito una persecución por perjurio, bajo la base de que no había sido juramentado antes de haber sido examinado. La sección 117 del Código Penal provee lo siguiente:

"Toda persona que habiendo jurado testificar, declarar, deponer o certificar la verdad ante cualquier tribunal, funcionario o persona competente, en cualquiera de los casos en que la ley permitiere tomar tal juramento, declarare ser cierto cualquier hecho esencial, conociendo su falsedad, será culpable de perjurio. No se admitirá como defensa en ninguna causa por perjurio la circunstancia de haberse prestado o tomado el juramento en la forma irregular."

Esta es la misma sección que forma parte del mismo capítulo que se aplica también a los *affidavits* y deposiciones. En estas formas de tomar el testimonio de los testigos, el juramento frecuentemente sigue más bien que precede a la rela-

ción de hechos. Los tres modos se encuentran establecidos
en las secciones 123, 124, 125 y 126 de la Ley de Evidencia,
leyes de 1905, página 146. Con arreglo a esa ley, no hay
tiempo fijo para el juramento en cualquiera de sus diferen-
tes formas. Tomemos el caso del testigo Ortiz. Aun si él
hubiera estado deseoso de producir un testimonio falso y
hubiera sido de tal manera astuto que creyera que la falta
de habérsele juramentado le hubiera dado la oportunidad
para ello, su situación hubiera sido materialmente cambiada
cuando fué llamado a prestar juramento de que lo que había
dicho era la verdad.

El hubiera entonces tenido un *locus penitentiae,* y hubiera
podido solicitar que se le hubiera vuelto a examinar. No
habiéndolo hecho así parece que quedó obligado por el so-
lemne juramento de que era cierta su declaración, y apenas
podría ser oído para alegar en su favor el momento pre-
ciso en que prestó juramento, cuando su declaración, si es
que es esencial, hubiera podido afectar la vida o la libertad
de un ciudadano.

Sin embargo, la opinión de la corte desestimando la mo-
ción de nuevo juicio no forma parte del récord. Es cierto
que la sección 356 del Código de Enjuiciamiento Criminal,
tal como quedó enmendada por la ley de 1908, exige que una
copia de la moción para nuevo juicio y de la decisión de la
corte sean incluídas en la transcripción a los efectos de la
apelación y certificadas por el secretario, pero esta disposi-
ción legal no convierte a la opinión emitida en relación con
la decisión en una parte del récord para el propósito de revi-
sar los hechos. La función de un pliego de excepciones o
de una exposición del caso, es promover las cuestiones de
hecho y hacerlas partes del récord. Nosotros hemos tenido
ocasión de considerar esta materia en los siguientes casos:
*People* v. *Acosta,* 11 D. P. R., 249, y *People* v. *Sutton,* 17
D. P. R., 345. Véanse también los siguientes casos: *Morgan*
v. *Robinson Co.,* 157 Cal., 348; *Porter et al.* v. *Industrial*
*Printing Co.,* 26 Mont., 170; 3 Cyc., 181–182.

Aquí surge otra vez la cuestión particular que nosotros hemos discutido acerca de que nosotros conoceríamos más exactamente lo que en realidad tuvo lugar, si el juez que intervino en la causa hubiera tenido una oportunidad para revisar los hechos a virtud del pliego de excepciones o de la exposición del caso que se le hubieran presentado debidamente. Es por estas razones que nosotros estamos conformes en que el verdadero fundamento de la sentencia de esta corte es la falta de una propia base para revisar, a saber, un pliego de excepciones o una exposición del caso debidamente certificados por el juez sentenciador. Además, nosotros estamos convencidos por haber examinado la transcripción, que el acusado no sufrió ningún perjuicio por la acción de la corte inferior. El propio acusado subió a la silla de los testigos y basó su defensa totalmente en el hecho de que al tiempo de la muerte no era enteramente responsable por razón de haber perdido temporalmente el dominio de su voluntad.

### VOTO PARTICULAR EMITIDO Y PRESENTADO POR EL JUEZ ASOCIADO SR. MACLEARY.

El apelante en este caso fué procesado ante la Corte de Distrito de Guayama a virtud de una acusación presentada contra el mismo en la referida corte, en la que se le imputaba la comisión del delito de asesinato, porque según se ha alegado, el día 2 de febrero de 1911 y en la ciudad de Guayama, el acusado ilegal y voluntariamente y con malicia premeditada y propósito firme y deliberado, y demostrando tener un corazón pervertido y maligno, dió muerte a Antonio Castillo Alvarez, haciéndole tres disparos de revólver e infiriéndole tres heridas de carácter grave que le produjeron la muerte; habiéndole acechado largo rato y atacándole alevosamente por la espalda.

Se celebró el juicio de esta causa ante Harry P. Leake, Esq., juez especial de dicha corte y un jurado, en los días 28

y 29 de abril del mencionado año 1911. Después de oída la
lectura de la acusación, la alegación de no culpable formulada
por el acusado, la prueba que fué presentada y las instruc-
ciones de la corte, el jurado emitió su veredicto declarando
al acusado culpable del delito de asesinato en segundo grado,
y como consecuencia de esto la corte lo condenó a reclusión
perpetua en el presidio.

Antes de que la corte dictara su sentencia, el acusado pre-
sentó una moción de nuevo juicio que fué desestimada por la
corte, y una vez dictada dicha sentencia el referido acusado
interpuso recurso de apelación tanto de la sentencia como de
la orden desestimando la moción de nuevo juicio. La trans-
cripción de autos contiene un pliego de excepciones y una rela-
ción del caso, así como la copia de la orden y de la sentencia
de la corte al desestimar la moción de nuevo juicio, las que
aparecen copiadas en toda su extensión.

Esta Corte Suprema por mayoría de votos confirmó la
sentencia de la corte inferior por el fundamento de que las
instrucciones dadas por la corte sentenciadora al jurado no
podían ser examinadas, en vista de que las mismas no apa-
recían certificadas y firmadas por el juez sentenciador; y
además, porque el pliego de excepciones y la exposición del
caso no habían sido aprobados y firmados por el juez que
conoció del mismo, sino por otro juez que fué nombrado pos-
teriormente para la misma corte; y porque aunque con
arreglo al estatuto, la orden negando la moción para nuevo
juicio forma parte de los autos, sin embargo no podía servir
de guía en la discusión de las excepciones, y en tanto en cuanto
se hace referencia a los hechos allí expresados, dicha orden no
formaba parte de los autos. En otras palabras, se negó al
acusado la revisión de las cuestiones que surgieron en el
juicio de su causa por no haber sido las mismas debidamente
presentadas a este tribunal; y debido a cierto tecnicismo que-
daron virtualmente eliminadas de los autos tanto las instruc-
ciones dadas al jurado como el pliego de excepciones y la
exposición del caso.

No me propongo revisar el caso conjuntamente en todos sus detalles sino que pasaré ligeramente sobre muchos puntos presentados en la transcripción y que aparecen más razonados en los alegatos de los abogados, acerca de los cuales se ha insistido en el acto de los informes orales. Por ejemplo, no se hará observación alguna del hecho de que según la transcripción y la lista de los jurados que en ella aparece en la página 16 de los autos, solamente once hombres intervinieron como jurados en este caso. Aunque en los autos no hay explicación acerca de esto, pudiera suceder que en realidad el jurado consistiera de doce hombres y que debido a una omisión involuntaria al hacerse la copia de la lista en los autos se omitiera el nombre de uno de dichos jurados. Si realmente hubiera sido cierto que el acusado fué juzgado ante un jurado compuesto de once hombres solamente, tal cosa constituiría quizás un error grave y fatal.

Examinando cuidadosamente las instrucciones de la corte se ve que las mismas no están completamente libres de defectos. Por ejemplo, el juez sentenciador no debió haber hecho referencia en la forma en que lo hizo con respecto a la Corte Suprema y al Gobernador en la parte principal de sus instrucciones; sino que debió haber estado satisfecho con instruir al jurado que era su deber considerar la culpabilidad o inocencia del acusado, y que la ley pone en manos del juez sentenciador la responsabilidad de fijar la cuantía de la pena; por tanto ésta, como otras impropiedades que pueden verse en las instrucciones, no eran esenciales y pueden no haber afectado al veredicto del jurado, aunque pudiera ser que el mismo estuviera influído por ellas. Nadie puede decirlo.

Las excepciones formuladas a la desestimación de las recusaciones hechas a los tres jurados que fueron posteriormente recusados perentoriamente, no serán tomadas en consideración ahora porque no es necesario discutir las cuestiones que allí se presentaron, aunque no estoy enteramente satisfecho de que, habiendo sido aprobado por el juez de la corte de distrito que se encontraba en el desempeño de su cargo, el pliego de

excepciones y la exposición del caso en la fecha en que las mismas fueron presentadas, sin que se hubiera formulado objeción contra los mismos por ninguna persona, no fueran debidamente parte de los autos. En otras palabras, no considero la cuestión relativa a la autoridad del presente juez de la corte de distrito de Guayama, al aprobar un pliego de excepciones presentado contra las resoluciones de su predecesor como una cuestión jurisdiccional, y entiendo que la acción tomada por el mismo en cuanto a este particular fué simplemente irregular, y no habiéndose tomado objeción contra ella debió haberse admitido sin discusión alguna. Las recusaciones formuladas contra los jurados y las resoluciones dictadas con respecto a las mismas se encuentran especificadas brevemente en la orden de la corte sentenciadora desestimando la moción de nuevo juicio, y si se les considera con referencia a ese documento solamente, no puede declararse que sean erróneas. Si estas recusaciones y las órdenes desestimando las mismas pudieran considerarse a la luz del pliego de excepciones y de la exposición del caso, indudablemente aparecerán en éstas errores sustanciales y perjudiciales a los derechos del acusado, pero como mi inconformidad se funda principalmente en otra proposición, no estudiaré estas cuestiones detenidamente.

La admisión de la declaración de Manuel Ortiz que declaró sin la sanción de un juramento es la razón principal que tengo para disentir de la opinión de la corte y de la sentencia en esté caso, que confirma la dictada por la corte inferior. Es un principio de ley criminal bien conocido no solamente en América sino en todo el mundo, que a todo acusado que se le imputa la comisión de un delito tiene derecho a un juicio imparcial, y que un veredicto y sentencia condenatoria por justos que sean deben quedar completamente libres de sospechas y ser enteramente compatible con la debida, justa y pura administración de la ley. (*Long* v. *State,* 10 Texas Court of Appeals, 186.)

Este tribunal se negó a considerar la cuestión referente a

la legalidad y propiedad de' la declaración prestada por el testigo Ortiz por el motivo de no haber sido dicha declaración debidamente incluída en el pliego de excepciones y la exposición del caso y por el fundamento de que la orden negando la moción de nuevo juicio que aparece relacionada en la transcripción, que según nuestro estatuto formaba parte de los autos, no podía ser considerada como tal para los fines de la revisión de este error. No puedo estar conforme con una interpretación tan limitada de' la ley estatutoria, pues esto sería anular la intención de la legislatura. A mi juicio los hechos expresados en la orden desestimando la moción de nuevo juicio deben ser considerados como parte de los autos para todos los fines, aun cuando algunos de los mismos no aparezcan incluídos en el pliego de excepciones o en la relación de los hechos. Según el artículo 356 del Código de Enjuiciamiento Criminal tal como ha quedado enmendado por la ley que aparece en las leyes de la sesión de 1908, página 90 del texto inglés y página 56 de la edición española, cuya ley fué aprobada en 7 de marzo de 1908, los autos que han de presentarse a este tribunal constan de los siguientes documentos a saber:

"1º., la acusación; 2º., alegación del acusado; 3º., instrucciones de la corte al jurado, si el juicio hubiere sido por jurado; 4º., instrucciones denegadas, si las hubiere; 5º., el veredicto; 6º., moción para nuevo juicio, si la hubiere y la decisión de la corte; 7º., opinión y sentencia; 8º., pliego de excepciones, si lo hubiere; 9º., relación de hechos si la hubiere; 10º., notificación de apelación; 11º., certificado del secretario haciendo constar que es copia fiel de los originales existentes en los archivos de la corte.''

La moción para nuevo juicio y la resolución de la corte sobre dicha moción (6º.) forman parte de los autos de' igual manera que el pliego de excepciones (8º.), y la relación de hechos (9º.). Así son considerados todos los documentos por este estatuto, y a menos que no formaran así parte de los autos, ninguno de los mismos podría ser considerado por este

tribunal. Al considerarse la resolución de la corte sobre la moción de nuevo juicio como parte de los autos no se estableció limitación alguna por la ley en cuanto al uso que ha de hacerse de la misma y se hace difícil el comprender cuál sería el objeto de ella, a no ser el de que fuera tomada en consideración por esta corte al revisar los documentos relativos al juicio celebrado ante la corte inferior. Las leyes relativas al procedimiento criminal deben ser interpretadas imparcial y liberalmente como las demás leyes y no debe dárseles una interpretación tan limitada que despoje al acusado de sus derechos a un juicio imparcial y a la revisión de cualesquiera errores que hayan sido cometidos por la corte sentenciadora al declararlo culpable. El fin principal de todas las reglas y máximas de interpretación fundadas en dichas reglas consiste en descubrir la verdadera intención de la ley que expresa la voluntad del legislador. (1 Kent's Com. [6th Ed.], 468; Endlich Int. of Statutes, secciones 8 y 295; *Parkinson* v. *State,* 14 Md., 184; 74 Am. Dec., 529; *People* v. *Weston,* 3 Neb., 319; *Le Roy ex parte,* 17 D. P. R., 1229, y casos citados en la opinión.) Por consiguiente, considerando la resolución de la corte desestimando la moción para nuevo juicio como parte de los autos, como indudablemente es si el estatuto continúa en vigor, examinemos esa resolución y veamos los hechos que aparecen en la misma.

Según puede verse de los autos, la orden de la corte sentenciadora al desestimar la moción de nuevo juicio es como sigue:

"En la Corte de Distrito del Distrito Judicial de Guayama, Puerto Rico. *El Pueblo de Puerto Rico* v. *Andrés Coll y Dros.* Asesinato. La moción de nuevo juicio presentada por el abogado del acusado en este caso, se deniega, por las siguientes razones: 1. Porque la corte no considera que ha cometido error al denegar la recusación motivada del jurado, Don Federico Amadeo; 2. Porque tampoco considera la corte que ha cometido error alguno, al negar la recusación motivada del jurado Don Angel Pacheco; 3. Porque no considera que incurrió

en error, al no admitir la recusación del jurado Don Jorge Grau; 4.º
Porque tampoco ha incurrido en error al permitir que el testigo de
cargo, Manuel Ortiz, que había declarado sin prestar juramento, vol-
viera de nuevo a la sala de la corte y prestara el juramento de que
lo que había declarado era la verdad, toda la verdad y nada más que
la verdad.   Aparece del récord que dicho testigo, por negligencia de
alguien, no prestó juramento juntamente con los demás testigos que
declararon en dicha causa, y que declaró sin estar bajo tal jura-
mento; pero habiéndose llamado la atención de la corte sobre este
hecho, antes de que el caso fuera sometido al jurado, y considerando
que la negligencia era subsanable, la corte permitió al testigo que
volviera de nuevo a la sala y prestara el juramento de que se ha hecho
referencia.   Por lo tanto, y no existiendo en el concepto del juez que
suscribe otras razones para declarar con lugar la petición de nuevo
juicio solicitada por el abogado del acusado en este caso, queda, como
queda dicho, declarada sin lugar dicha moción, debiendo comparecer
el acusado en el día de mañana, 16 del actual mes de mayo, para
recibir sentencia sobre el fallo de convicción dado por el jurado.
Guayama, 15 de mayo de 1911.   H. P. Leake.   Juez del Distrito.''

Se ha dicho que ''de ninguno de los documentos sometidos
a nuestra consideración aparece si el testigo fué examinado
nuevamente después de haber prestado juramento.''   Indu-
dablemente que si se le hubiera examinado de nuevo, así lo
hubiera expresado la corte de distrito en su resolución que
hemos citado en toda su extensión, y debemos deducir lógica-
mente de su silencio con respecto al particular, que no se hizo
ningún otro examen al testigo.   El juez de distrito expresa
que el testigo Ortiz declaró sin haber prestado juramento
alguno y que dicho juez trató de subsanar ese defecto lla-
mando nuevamente a este testigo y obligándole a tomar un
juramento ''de que lo que había expresado era la verdad,
toda la verdad y nada más que la verdad,'' pero nada se ha
dicho de que el testigo fuera examinado nuevamente y según
claramente aparece de la manifestación hecha por el juez sen-
tenciador, evidentemente dicho testigo no fué examinado de
nuevo.   El testigo Manuel Ortiz era un comerciante en cuya

tienda se encontraba el acusado Coll sentado esperando a que pasara Castillo, según el convenio que había hecho anteriormente con él, y fué desde la puerta de esta tienda de donde se dispararon los tiros. El testigo declaró con respecto a los hechos esenciales de la muerte y la declaración del mismo fué de la mayor importancia. La ley exige que la declaración de un testigo en todos los casos criminales, y sobre todo debe deducirse cuando se trata de la vida de un acusado, que se preste bajo la sanción de un juramento, después que el mismo ha jurado decir la verdad, toda la verdad y nada más que la verdad; y a menos que la declaración se preste en tal forma no es legal ni puede ser considerada por el jurado al dictar su veredicto. Una sentencia condenatoria dictada sobre una declaración que ha sido prestada sin haber tomado juramento al testigo es *ipso facto* nula y de ningún valor.

*State* v. *Smith,* 78 N. C., 462.

*Hawks* v. *Baker,* 6 Greenleaf, 72; 19 Am. Dec., 192.

*State* v. *Tom,* 8 Oregon, 181.

*State* v. *Lowry,* 24 So. Eastern Rep., 562.

*Hodd* v. *City of Tacoma,* 88 Pac. Rep., 842.

*Jackson* v. *Parkhurst,* 4 Wendell, N. Y., 373.

40 Cyc., 2410 *et seq.,* y casos citados.

Es inútil decir que ninguna objeción se hizo contra la misma cuando declaraba el testigo. El hecho de que no fué juramentado cuando los demás testigos lo fueron, no apareció hasta después que ya había declarado y salido de la corte, y la omisión no fué advertida ni por el mismo juez sentenciador. La objeción se formuló en tiempo, cuando la moción para que se eliminara su declaración fué presentada a la corte y repetida de nuevo en la moción de nuevo juicio, habiéndosele presentado por tal motivo dos oportunidades a la corte sentenciadora para corregir el error en el cual había incurrído. La omisión en corregir tal defecto constituye ciertamente un error judicial.

En los casos en que un testigo ha declarado inadvertidamente sin haber prestado juramento, la práctica debida es llamar nuevamente a dicho testigo a la silla y hacer que preste el debido juramento de que dirá la verdad, toda la verdad y nada más que la verdad, y deberá entonces examinársele de nuevo a presencia de la corte y del jurado con respecto a las mismas cuestiones acerca de las cuales había declarado anteriormente sin la sanción de un juramento; y en cuanto a otras cuestiones que fuera necesario. (Casos citados anteriormente.) No puede declararse debidamente que los errores e irregularidades cometidos por la corte al admitir la declaración del testigo Ortiz no fueran esenciales o perjudiciales. Indudablemente que fueron muy importantes y perjudicaron el caso del acusado ante el jurado y tuvieron por objeto influir en el veredicto del jurado que fué en contra del acusado. En suma, de todo lo que aparece en la relación de hechos, aun cuando la declaración de Ortiz hubiera sido eliminada de los autos, es muy dudoso si aun así quedaría bastante para sostener la sentencia condenatoria. (Véanse los autos *in extenso.*)

Apreciando conjuntamente todas las circunstancias de este caso según las mismas aparecen de la transcripción de autos que ha sido presentada, la resolución desestimando la moción de nuevo juicio constituyó un grave y serio error que debió haber motivado la revocación de la sentencia dictada por la corte sentenciadora. El caso debió haberse devuelto a la Corte de Distrito de Guayama para la celebración de un nuevo juicio, de acuerdo con las terminantes disposiciones de nuestro Código de Enjuiciamiento Criminal y los principios generales de ley reconocidos en todos los Estados Unidos.