## PEOPLE *v.* HOPT.

CHALLENGE TO JUROR FOR IMPLIED OR ACTUAL BIAS, HOW MADE.—A challenge to a juror for "actual bias" or for "implied bias" must particularly specify the cause from which bias is to be inferred. It is not sufficient that the challenge be made generally; as "for implied bias," or "for actual bias;" a challenge so made should be disregarded.

JUDICIAL NOTICE OF WHEN STATUTES BECOME OPERATIVE.—Courts will take judicial notice of the public statutes and authoritative decisions of courts within their jurisdiction. Consequently the action of the trial court in proceeding to try and determine challenges for actual bias, pursuant to the act of March 13, 1884, instead of appointing triers as formerly required by the criminal practice act of 1878, will not be reversed as error, even though the record is silent as to whether said amendatory act of March 13, 1884, has been published as required by the act of January 19, 1854.

BIGAMIST, DISQUALIFCATION OF, AS JUROR—THE POSITION OF A JURYMAN NOT AN OFFICE.—Except in prosecutions for bigamy or polygamy under some statute of the United States, a person is not disqualified as a juror under section 5 of the act of congress of March 22, 1882, by reason of his being a bigamist or polygamist, neither is such a person disqualified under section 8 of that act, as the position of a juryman is not such an "office or place of public trust, honor, or emolument" as is contemplated by said section 8.

APPEAL from the third district court. The opinion states the facts.

*W. G. Van Horn* and *S. H. Snyder*, for the appellant.

*W. H. Dickson, U. S. district attorney,* for the respondent.

TWISS, J.:

The defendant is charged by the indictment in this case with the crime of murder, and upon trial the verdict was "guilty of murder in the first degree." From the judgment upon this verdict the defendant appeals to this court. The record and judgment roll only are before us; if they show apparent error to the detriment of the defendant, the judgment must be reversed; if they do not, it should be affirmed.

The criminal procedure act of 1878, sec. 339, requires the clerk of the trial court, when judgment upon conviction is rendered, to annex together and file certain papers, which shall constitute a record of the action, among which is "a copy of the minutes of a challenge interposed to the panel of the trial jury, or to an individual juror, and the proceedings thereon."

The record shows that Silas F. Lake was called, examined, and "passed" by both parties, as to his statutory qualifications, and sworn upon his *voir dire;* and then the following statement: "Challenged by the defendant for implied bias, denied by the prosecution, overruled, exception." Construing this entry to mean that the juror was challenged by the defendant for implied bias, that the challenge was denied by the prosecution and overruled by the court, to which ruling the defendant at the time excepted, does it show error committed by the court? A challenge for implied bias may be taken for any one or more of the causes mentioned in any one or more of the nine subdivisions of section 242 of the criminal procedure act of 1878; but section 244 requires that "one or more of the causes stated in section 242 must be alleged." Each one of the nine subdivisions of section 242 has at least one cause or ground of challenge not contained in either of the others, and therefore a challenge for "implied bias," without any specification as to the particular ground of the challenge, is loose and indefinite, without point or certainty as the real or alleged objection to the juror. The court should be informed by the challenging party upon which one or more of the statutory grounds he relies; that the examination of the juror may be directed to some one or more of the particular grounds of objection allowed by the statute. "Unless the cause be alleged, the challenge may be disregarded

by the court. It is not enough to say, 'I challenge the juror for implied bias,' and then stop. The particular cause from which bias is to be inferred must be stated. Such was the rule of the common law, and is the direction of the statute of this state. In the present case the challenges were interposed in general terms, 'for implied bias,' without a specification of the particular causes, and for this reason, if for no other, they were properly disallowed"—is the language of the court in *People* v. *Reynolds,* 16 Cal. 131, under a statute substantially, if not identically, like ours; and is sustained by every reason that can be urged in behalf of that certainty, which should characterize all legal proceedings: *People* v. *Dick,* 37 Id. 277; *People* v. *Hardin,* Id. 258.

David Archabald and another juror were sworn upon their *voir dire,* and in each case the following entry appears: "Challenged by the defendant for both implied bias and actual bias. Both challenges denied by the prosecution, and both overruled; exception." Section 26 of the act of the territorial legislature, approved March 13, 1884, provides that, "in a challenge for actual bias, the causes stated in the second subdivision of section 241 must be alleged." The second subdivision of section 241 is as follows: "2. For the existence of a state of mind on the part of the juror which leads to a just inference in reference to the case that he will not act with entire impartiality, which is known in this act as actual bias." We now consider the challenges for actual bias, and such questions as are common to both implied and actual bias; in making the challenges for actual bias, no ground or cause whatever was alleged, and no effort was made to comply with section 26 of the act of 1884, in alleging the causes as there required, and the failure to comply with the statute in this respect is fatal. The mere assertion, "I challenge the juror for implied bias," or, "I challenge the juror for actual bias," is no challenge, for the reason that the express requirements of the statute are ignored; there being no attempt to comply in substance or form to their explicit provisions, and the court might well at the time have ignored the declaration or position of counsel. But there is another feature of this subject. The record shows no examination of the challenged jurors upon their *voir dire,* or any testimony whatever pre-

sented either by the challenging or adverse party; and it is impossible to ascertain to what ruling or action of the court the exception of the defendant is taken. We can not say the exception is taken to any statement admitted against objection, or that it was to the rejection of any offered testimony; for the record is silent as to the matter. If the record does not show that some question or matter was before the court, and that the court erroneously ruled thereon, we will not presume there was error, to the detriment of the defendant.

Although these principles, in our opinion, clearly settle all questions relied upon by the defense, arising upon the challenges for actual or implied bias made by the defendant, and the overruling of the same, we will not pass over without consideration the claim of the defense that the court should have appointed triers to try the challenges for actual bias, and that the trial of them by the court was error available to the defendant in this court, although no exception was taken thereto in the district court. Sections 246 to 253 of the criminal procedure act provide that challenges for actual bias shall be tried by triers appointed by the court for that purpose: *Hopt* v. *Utah*, 110 U. S. 574. By sections 26, 27, and 28 of an act of the legislature of Utah, approved March 13, 1884, entitled "An act amending an act regulating the mode of procedure in criminal cases, approved February 22, 1878," the provisions of the criminal procedure act of 1878, requiring the court to appoint triers, and for the trial by triers of all challenges for actual bias, are repealed: and the court itself is required to try all such challenges; and the question is, Was the act of March 13, 1884, in force at the last trial of this case in the district court? if it was, the court committed no error in trying the challenges without the intervention of triers appointed for that purpose. The act of Januray 19, 1854, provides "that each act and resolution is in force from the date of its publication in any public manner, unless a certain time is specified:" Comp. L. 78. The record is silent as to any publication of the amendatory statute of March 13, 1884. It is a rule of law that courts will take judicial notice of the statutes and authoritative decisions of courts within their jurisdiction. We see no error committed by the court in this respect: 1 Kent's Com. 508.

John Gillispie was "challenged for refusing to answer defendant's questions as to whether he was living in polygamy; refused; exception." This is a record entry as to this juror; the same in substance appears in the examination of another juror, from which it is claimed the court erred in refusing to allow the challenge.

Except in cases for bigamy or polygamy, no law has been cited to us, and we have found none, that requires the court to excuse a juror from service in the trial of a cause for the sole reason that he refuses "to answer whether he is a polygamist or not." But construing the refusal of the juror to answer to be an admission that he was at the time a polygamist, was it error to overrule the challenge? Section 5 of chapter 47 of the statutes of the United States, approved the twenty-second of March, 1882, provides : "That in any prosecution for bigamy, polygamy, or unlawful cohabitation, under any statute of the United States, it shall be sufficient cause of challenge to any person drawn or summoned as a juryman or talesman; first, that he is or has been living in the practice of bigamy, polygamy, or unlawful cohabitation with more than one woman." Section 8 of the same act is as follows : "That no polygamist, bigamist, or any other person cohabiting with more than one woman, and no woman cohabiting with any of the persons described as aforesaid in this section, in any territory or other place over which the United States have exclusive jurisdiction, shall be entitled to vote at any election held in any such territory or other place, or be eligible for election or appointment to or be entitled to hold any office or place of public trust, honor, or emolument in, under, or for any such territory or place, or under the United States." Under this eighth section the defendant claims that the overruling of the challenge was error.

Under section 5 it is certain that a bigamist or polygamist is, upon challenge for the reason that he is a bigamist or polygamist, in a prosecution for bigamy or polygamy, a disqualified juror; and section 8 is a disqualification of the same persons as voters; and disentitles them to hold any office or place of public trust, power, or emolument in or under or for this territory, or under the United States. If any doubt attaches to the words "office or place of public trust, honor, or

emolument," under the claim of the defendant that they in-
clude or should be construed to include the term "juror," then
we may look at the whole act in determining the doubt; for the
whole statute is to be taken together; and any and all parts of
it may be read in connection with any particular clause, to de-
termine any doubt as to the intent or meaning of such clause;
and effect if possible must be given to every sentence and
word; and where a given construction would render a section
or even a word redundant, caution should be exercised be-
fore such construction should be adopted; for it is not to be
presumed that acts of congress are composed of words thrown
loosely together, without due consideration of the effect or
force which every word in its place has to every other clause
or part of the act.   If the language of section 8 includes
within its proper and legal import the term "juror," then
the part of section 5 above quoted is superfluous, and an in-
explicable redundancy—idle words without effect, simply
because the more general and comprehensive terms of section
8 include all and more than is comprised in the clear, em-
phatic, and express terms of section 5.   As a matter of con-
struction, we are of the opinion that the law is against the
position taken by the defense, and proceed to the consider-
ation of the question, Can the language of section 8 include
within its legal meaning and import the term or idea of
"juror"?   We are of the opinion that it does not.

A trial jury in this territory is a body of twelve men, pos-
sessing the requisite qualifications, duly summoned, and sworn
to well and truly try the questions of fact submitted to them
by the court, and a true verdict render, according to the law
and the evidence: a juror is one of such body; and must be a
citizen of the United States, and possessed of certain qualifica-
tions; he is neither appointed nor elected to his position of
duty: his name is drawn from a list of two hundred names, pre-
pared by the clerk of the district court and the judge of the
probate court within and for the county where the district
court is held.   Such list is composed of names of citizens of the
United States, who can read and write in the English language,
and have resided in the district six months next preceding
the making of the list; and when duly summoned, he must
appear in court at the legally named time, or he, by his

default, becomes (if without excuse) liable to the penalty imposed for disobedience to process of court; and for his services as such juror is entitled to the mileage and per diem allowed by statute.

In *United States* v. *Hartwell*, 6 Wall. 393, the court say: "An office is a public station, or employment, conferred by the appointment of government. The term embraces the ideas of tenure, duration, employment, and duties." Mr. Bouvier in his dictionary defines office to be " a right to exercise a public function or employment, and to take the fees and emoluments belonging to it."

" The idea of an office clearly defined embraces the ideas of tenure, duration, fees or emoluments, rights and powers, as well as that of duty; a public employment confirmed by appointment of government:" Burrill's Dictionary.

In 20 Johns. 493, Platt, J., defines office to be " an employment on behalf of the government in any station or public trust, not mere transient, occasional, or incidental." An office is defined to be a right to exercise a public function or employment, and to take the fees and emoluments belonging to it: 25 Cal. 98; *People* v. *Stratton*, 28 Id. 388.

Jury duty is in the nature of service due from the citizen to the government, necessarily required in the administration of its laws; its character has but little similarity to tenure, duration, powers, and the right to exercise powers conferred by the appointment of government, which are essential characteristics of office, and "not mere transient, occasional, or incidental."

The name of a man is selected, and with one hundred and ninety-nine others is placed in a box, which is denominated the jury-box, from which it is drawn by chance; and without his knowledge of any previous steps, he is summoned to appear in court to perform the duty of a juror; it is true, he has a duty of a public nature to perform, and for it he is compensated out of the public treasury; but in what other respect does his position or his duties correspond with the essential elements of office? He has no certain term of office. He has no right to, and has no power to enforce a right to, the performance of any act or service which constitutes the performance of official duty. He is liable at any moment to be discharged by

the court from all service; and to be excused by either party from serving in the trial of any cause, without consulting his wishes or interests. The oath he takes, in its terms and scope, limits his duty to the facts of the particular case then on trial; and is not the oath required by the laws of this territory, or by the constitution and laws of the United States, to be taken by public officers: *State* v. *Leonard*, 48 Conn. 535. The position of a juryman is to a certain extent a " place of public trust and emolument," but not in the sense of these statutory provisions.

A witness summoned in behalf of the people is entitled to the mileage and per diem allowed by law in substantially the same manner as a juror; a man called upon by the United States marshal or by a sheriff to aid in the preservation of the public peace, or to assist temporarily in the performance of an act or duty of a public nature, is asked to hold for the time being a place of public trust and emolument, and although both of these persons are within the classes described in sections 5 and 8, it will hardly be claimed that one must be excluded from the witness-stand, and the other not permitted to assist in the preservation of the public peace. The law carefully and expressly excludes bigamists and polygamists from juries, when challenged, in the trial of bigamy and polygamy cases; for the reason that they are of this class of persons. If it was the intention of congress to prohibit them from the performance of jury duty in all cases, the use in section 8 of appropriate language would have done it; or such as is in section 5 would have enabled either party by challenge to exclude them from any particular case. It is not probable that congress would, in the guarded and carefully expressed terms of section 8, have allowed by challenge the exclusion of bigamists and polygamists from juries in cases of bigamy or polygamy only; and afterwards, in the same act, in general terms exclude all bigamists and polygamists from all juries, without reference to the character of the cases. Apparently, section 8 was not intended to and it does not affect the qualification of jurors, and we can not by construction interpolate into it a provision foreign to its evident objects and purposes, not by fair construction implied, as we would if the position of the defense should be sustained.

The judgment of the district court is affirmed and the case re-manded.

HUNTER, C. J., and EMERSON, J., concurred.