**The STATE of Utah, Plaintiff and Respondent,**

v.

**Keith L. MOOSMAN, Defendant and Appellant.**

**No. 13891.**

Supreme Court of Utah.

Nov. 19, 1975.

Jack W. Kunkler, of Salt Lake Legal Defender Assn., Salt Lake City, for defendant and appellant.

Vernon B. Romney, Atty. Gen., Earl F. Dorius, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

ELLETT, Justice:

Mr. Moosman, the appellant herein, was defendant in the court below, where he was charged with and convicted of the crime of unlawful distribution of a controlled substance for value.[1]

He makes only one assignment of error, viz.: The failure of the trial court to order Salt Lake County (where he was tried) to pay the expenses of an expert witness to come from Canada to testify in his behalf or to grant a six weeks' continuance of the trial date.

The defendant was arraigned on the charge in question April 19,[2] and the case

---

1. Marijuana.

2. All dates are in the year 1974.

was set for trial May 20. There were several continuances and resetting of the trial, but it was finally set for September 19.

On September 13, defendant moved the court to continue the trial date six weeks or to pay the expenses of a witness in Vancouver, British Columbia, Canada, who professed to be an expert on the efficacy of polygraphic tests given to people. The witness had not given a test to the defendant and could only testify so as to persuade the court to admit the results of the test as an aid to the jury in determining guilt or innocence.[3]

The trial court was of the opinion that the motion was simply an effort to delay the oft-postponed trial date and denied the motion.

██ The granting of a continuance of a case is a matter resting in the sound discretion of the trial judge, and that discretion will not be interfered with on appeal except where the court clearly abused its discretion in the matter.[4]

The appellant also claims that he was denied his constitutional right to "due process of law" when the court refused to bring in the witness from Canada. His argument seems to be based on the assumption that if he is entitled to a free attorney at his trial, he likewise is entitled to free witnesses from wheresoever they may be. Even the federal courts have rejected this contention and have held that the calling of witnesses for an impecunious defendant lies within the sound discretion of the trial court.[5]

There was an expert witness in Salt Lake City who had administered a polygraphic test to the defendant. He was called by the defendant and out of the presence of the jury testified in part as follows:

Q. Is it possible—I suppose is it unusual for two persons—for two persons who are diametrically opposed on an issue to both take polygraph tests and both come out as telling the truth?

A. I believe that that would be possible.

Q. What would that indicate to you?

A. Probably lack of interest on the part of the one or both parties.

Q. They were both telling the truth?

A. Right. I would say that it would not be an indication of truthfulness if both parties came out. I would say that it would probably be more of an inconclusive category.

The judge later inquired, "Is this an exact science?" And the witness answered, "I would say no."

The court then inquired about his own ability to give a polygraph test, and this testimony was given:

A. I think with the reading of the material available through the public library, you could probably conduct one. I am sure you could probably conduct one, Your Honor.

THE COURT: Would I have the 97 per cent degree of accuracy?

A. I think that you could probably place any degree of accuracy that you wanted on it. I would say—

THE COURT: You say I could attain 97 per cent accuracy?

A. I would say you might claim that.

THE COURT: But I wouldn't—

A. I don't know. That would be something that would have to be determined or measured.

THE COURT: And how would I measure that?

---

3. In this case he wanted to show innocence. Had the result of the test been unfavorable and had the prosecution offered it in evidence, the defendant undoubtedly would have made the welkin ring with objections.

4. *Thompson v. United States*, 372 F.2d 826 (5th Cir. 1967); *United States v. Green*, 497 F.2d 1068 (7th Cir. 1974).

5. *United States v. Beasley*, 479 F.2d 1124 (5th Cir. 1973); *Thompson v. United States*, *supra*, note 4.

A. I think the easiest way would be by discussing it with other examiners, by going over each other's charts, having someone else evaluate your performance and your work and let them act as the individual who is going to evaluate or judge you.

THE COURT: Then I take it there is difference of opinion between examiners and particular examinations on occasion. Is that correct?

A. I would say yes, that there have been cases recorded where there has been differences of opinion. However, they are becoming fewer as they develop the techniques.

THE COURT: Then I take it a great deal depends upon the individual that conducts the examination?

A. Yes, I believe so.

THE COURT: So that you might have one individual who might have a 97 per cent degree of accuracy and another 40 per cent degree of accuracy?

A. Yes, I believe so.

■ There was no error on the part of the trial court in refusing to continue the case or in refusing to compel Salt Lake County to pay the expenses of the witness in Canada to come and testify about the accuracy of polygraph tests in general.

The appellant does not claim any error on this appeal because of the failure of the court to permit the jury to hear the testimony of the expert who conducted the test or to know the result of the polygraphic test. We will rule on the admissibility of a polygraph test when the matter is before us. In the meantime, trial courts may await the time when the test is scientifically exact or when it has become so well recognized as being accurate as to make it admissible against an accused as well as in his favor.

The judgment is affirmed.

HENRIOD, C. J., and CROCKETT, TUCKETT and MAUGHAN, JJ., concur.