STATE of Utah, Plaintiff and Appellant,

v.

Billy Joe BAILEY, Defendant
and Respondent.

No. 15206.

Supreme Court of Utah.

Jan. 10, 1980.

Robert B. Hansen, Atty. Gen., Earl F. Dorius, Asst. Atty. Gen., Theodore L. Cannon, Salt Lake Co. Atty., Salt Lake City, for plaintiff and appellant.

Steven Lee Payton, Salt Lake City, for defendant and respondent.

WILKINS, Justice:

Defendant appeals from his conviction, after a trial by jury in the District Court of Salt Lake County, of distribution of a controlled substance for value, in violation of § 58–37–8(1)(a). (All statutory references are to Utah Code Ann., 1953, as amended.)

On September 28, 1976, Donald Bird, a University of Utah Police Officer and Special Deputy for the Salt Lake County Sheriff's office, was working undercover in the Fourth Quarter Lounge in Salt Lake City under the direction of the Narcotics Division of the Salt Lake County Sheriff's of-

fice. Officer Bird testified that he shared a table with three persons he described as "Big Jim, another black individual and one female black," and that he was acquainted with Big Jim but did not know the other two. Bird had with him two watches, and he described the events involving the watches as follows:

> I asked him [Big Jim] if he would be interested in buying or trading the watches for some money or for narcotics. . . . I showed them to Big Jim, and then I showed them to the other black individual. He asked to see them. . . The other black individual said he would have to go out and talk with Bill Bailey. . . . He then gave me [returned to me] the watches and went outside.

When asked if the individual, who left, returned with anyone else, Bird responded affirmatively, described the defendant, and said, "I know him as Bill Bailey. . . . I was introduced to him several weeks previously by Big Jim." In describing Bailey's actions, Bird said, "Mr. Bailey asked to see the watches. I then showed him the watches, and he looked at both watches and set the one watch down." With regard to the other watch, "He then examined it . . and asked me how much I wanted for it. . . . I told him I would take fifty dollars for it. . . . He said, 'Well I don't want that watch,' and he went to set it down. . . . I then said I would take a bag for it. . . . He then told the other black individual who he came back in the bar with, that had left previously, he told him to pay me. . . . Mr. Bailey put the watch on his arm and then left. . . . The black individual then slid in beside me on the bench and reached into his pants pocket and took out a blue balloon, handed it to me and asked me if that's what I wanted. . . . I said, 'Yeah, that's what I wanted.'" Bird took the balloon, and the other person "got up and walked out of the bar." The contents of the balloon on analysis proved to be heroin.

Defendant was arrested on January 26, 1977, and held without bail until trial. At the trial, the only witness to testify concerning the events at the bar was Officer Bird, although he admitted there were approximately fifteen other people in the bar at the time of the alleged sale.

During voir dire of the jury panel, prospective jurors were asked by the Court: "Are there any of you who believe you would be inclined to give the testimony of a Peace Officer greater weight than you would the testimony of someone who was not a Peace Officer? Would you be inclined to believe a Peace Officer's testimony more?" A Mr. Bushnell answered in the affirmative, but when he could not communicate a reason for this answer, the Court did not investigate further. Mr. Reimann, whom defendant claims is a Special Deputy for Salt Lake County, answered, "only on the basis that a Peace Officer is generally a very reliable observer. They are trained to be as such and they are not likely to jump to conclusions." Mr. Bushnell concurred in this. A Mr. Brown responded, "In my experience I have found with the deals with the Peace Officers in connection with my job that you can rely upon their testimony and their background to the utmost," and continued, "I would want to stand behind them a hundred percent." The Court's only reaction to this was to ask, "But you would take into account I assume their experience and their background and things of that nature?" Mr. Brown's answer to this was yes. Despite these statements, only Mr. Reimann was removed by the Court for cause; Mr. Brown and Mr. Bushnell were removed by use of two of defendant's four peremptory challenges. (Defendant used all four peremptory challenges available to him in a criminal case.)

During the closing arguments the prosecutor referred to defendant as a "criminal brought before the Bar of Justice," which reference was deleted by the Court after objection thereto. The prosecutor then indicated that the defense had the opportunity to call witnesses but did not do so. The Court warned the prosecutor that such comments were improper, telling the jury to disregard the statement. Later, when the prosecutor stated that the defendant "has the right to call witnesses in his own be-

half," the Court again indicated that this was not proper argument, but did not instruct the jury to disregard the statement. On the basis of these comments, counsel for defendant made a motion for arrest of judgment, or, in the alternative, to set aside the verdict. (No motion for a mistrial was made.) This motion was denied; the jury returned a verdict of guilty, and defendant was sentenced to the Utah State Prison for an indeterminate term of not less than one nor more than fifteen years.

Defendant seeks a new trial, and we shall discuss one issue, viz.: the District Court's failure to remove the two challenged jurors, Bushnell and Brown, for cause, which is dispositive. We do not discuss other issues raised by defendant, including prosecutorial misconduct, as the issue we do address is, as noted, dispositive and the other ones are substantially without merit in this case.

The Constitution of Utah, Article I, Section 12, guarantees the defendant in a criminal case the right to a trial by an impartial jury. Accordingly, various challenges to jurors are allowed as one vital feature to ensure an impartial jury. At issue here are challenges to prevent a juror from serving in the particular case at hand. Sec. 77–30–18 defines two categories of challenges for particular cause:

> (1) For such bias as, when the existence of the facts is ascertained, in judgment of law disqualifies the juror, and which is known in this Code as implied bias.

> (2) For the existence of a state of mind on the part of the juror which leads to a just inference in reference to the case that he will not act with entire impartiality which is known in this Code as actual bias.

Section 77–30–19 lists the bases for which a juror may be disqualified for implied bias. As none of the challenged jurors falls within any of the specified bases for implied bias, they must all be considered with reference to § 77–30–18(2) dealing with actual bias.

Impartiality has been defined by this Court as a "mental attitude of appropriate indifference." *State v. Brooks,* Utah, 563 P.2d 799, 802 (1977). The Court went on to say that a juror who had a relationship of "affection, respect, or esteem" with a witness or a party could not be "disinterested, indifferent, impartial." Id. at 802. *Brooks* involved two jurors who were friends of potential witnesses; although they testified that they could set aside those relationships and decide the case on its merits, in light of their relationships to the witnesses the Court inferred that they could not act with impartiality. Thus, it was held an abuse of discretion in that case to deny the challenge for cause.

The United States Supreme Court, considering this subject in *Reynolds v. U. S.,* 98 U.S. 145, 25 L.Ed. 244 (1878), stated that "The theory of the law is that a juror who has formed an opinion cannot be impartial." Id. at 155. Chief Justice Marshall, presiding over the trial of Aaron Burr in 1807, defined an impartial jury as one composed of persons who "will fairly hear the testimony which may be offered to them, and bring in their verdict, according to that testimony, and according to the law arising on it." *Burr's Trial,* p. 415. Marshall's test for impartiality, quoted with approval in *Reynolds,* is:

> [L]ight impressions which may fairly be supposed to yield to the testimony that may be offered; which may leave the mind open to a fair consideration of that testimony, constitute no sufficient objection to a juror; but that those strong and deep impressions which will close the mind against the testimony that may be offered in opposition to them; which will combat that testimony and resist its force, do constitute a sufficient objection to him. Id. at 416.

■ In the case at hand, the District Court asked "Are there any of you who believe you would be inclined to give the testimony of a Peace Officer greater weight than you would the testimony of someone who was not a Peace Officer?" Mr. Bushnell answered, "I think I probably would," but could not elaborate on his response. When asked by the Court if this would

interfere with his ability to return an impartial verdict, Mr. Bushnell made no definite answer; however, the Court failed to question him further. In response to the Court's question, Mr. Reimann said "a Peace Officer is generally a very reliable observer. They are trained to be as such and they are not likely to jump to hasty conclusions." Mr. Bushnell concurred in this. Despite these comments which facially raised a question of bias, the Court failed to further probe this matter. The Court did, however, remove Mr. Reimann for cause, on grounds not specified in the record, but refused to remove Mr. Bushnell although he had agreed with Mr. Reimann's comments, and had never said that he would be impartial in weighing the testimony of a peace officer. In those circumstances, the District Court had a duty to remove Mr. Bushnell for bias, or investigate further until the inference of bias was rebutted by showing that this was merely a "light impression," not one which would "close the mind against the testimony that may be offered in opposition." Failure to do either constituted an abuse of discretion.

In the case of Mr. Brown, the inference of bias was even stronger, for he said with reference to peace officers ". . . you can rely upon their testimony and their background to the utmost . . . I would want to stand behind them a hundred percent." The District Court's reaction to this response, which, without more, clearly shows bias, was to ask, "But you would take into account I assume their experience and their background and things of that nature?" to which Mr. Brown replied, "yes." As with Mr. Bushnell, the Court should have removed Mr. Brown or questioned him further to rebut the inference of bias. The Court's one question was not sufficient to rebut this inference, and in fact none of the challenged jurors testified that they could weigh Officer Bird's testimony impartially. Hence, the Court had insufficient evidence on which to base a conclusion that there was no bias and abused its discretion in failing to remove for cause all three jurors in whom an inference of bias was raised and not rebutted.

When the District Court failed to excuse Mr. Brown and Mr. Bushnell for cause, they were removed by the use of two of defendant's peremptory challenges. It was prejudicial error for the District Court to force defendant to remove by peremptory challenges two jurors whose voir dire testimony raised an unrebutted inference of actual bias. "A party is entitled to exercise his three peremptory challenges upon impartial prospective jurors, and he should not be compelled to waste one in order to accomplish that which the trial judge should have done."[1] In *State v. Moore,* Utah, 562 P.2d 629 (1977), failure to excuse the challenged juror for cause was prejudicial and "in effect it deprived defendant of one of his statutory peremptory challenges in that he was required to exercise one of the peremptory challenges to have Rock [the challenged juror] excused from serving on the jury." Id. at 631.

The State claims that the defendant has not proved he was prejudiced when he used his peremptory challenges to remove the challenged jurors. However, defendant cannot prove this empirically, and he is not required to do so. In *Crawford,* a civil case where six of eight jurors could return a verdict, a similar error was held not harmless although there was a unanimous verdict, because the juror who remained when the appellant exhausted his peremptory challenges "may have been a hawk amid seven doves and imposed his will upon them." At 542 P.2d 1093. The defendant was deprived in effect of two peremptory challenges, and in light of *Crawford* and *Moore,* the error in this case cannot be considered harmless.

Reversed and remanded for a new trial.

MAUGHAN and STEWART, JJ., concur.

1. *Crawford v. Manning,* Utah, 542 P.2d 1091, 1093 (1975). Note that *Crawford* was a civil case, hence the parties had only three peremptory challenges.

HALL, Justice (dissenting).

The majority concludes, as a matter of law, that *actual* bias on the part of two veniremen was displayed by virtue of their examination on voir dire. I do not agree that this Court should arrive at such a conclusion in the face of the contrary *factual* determination made by the trial judge.

I deem the trial judge to have acted well within the bounds of discretion afforded him, it being within his prerogative to pass upon the qualification of jurors and to try the challenges for cause.[1]

The trial judge has great latitude in examining prospective jurors on voir dire to ascertain their fitness and competency.[2] His advantaged position permits him to determine, first hand, whether reasonable grounds exist for believing that a prospective juror can render a fair and impartial verdict. As a necessary consequence, the decision whether to sustain a challenge for cause lies within his sound discretion.[3]

The object of voir dire examination is to ascertain whether prospective jurors meet statutory qualifications and, if so, whether there are grounds for challenge of either actual or implied bias and to enable the parties to intelligently exercise peremptory challenges.[4]

In this jurisdiction, the court generally conducts the voir dire examination, although the parties are permitted either to supplement the examination by such further inquiry as is material and proper, or request the court to do so.[5]

A challenge for actual bias is defined by statute[6] as one based upon the existence of a state of mind on the part of a juror which leads to a just inference in reference to the case that he will not act with impartiality. It is further provided by statute[7] that a challenge for actual bias must specify the cause from which bias is to be inferred, and it is not sufficient that the challenge be made *generally.*[8] The challenge may be oral, but must be entered in the minutes of the court or noted by the reporter.[9]

In the instant case, the defendant chose not to seek further voir dire examination, nor did he make of record any *specific* challenge for cause. Instead, he informed the court "I would like to reserve my objections having previously indicated to the Court that I challenge for cause." He thereupon proceeded to exercise his peremptory challenges, utilizing two of them to remove the prospective jurors in question from the panel. These procedural deficiencies, standing alone, are sufficient to sustain the discretionary ruling of the trial court, and they also distinguish this case from the prior pronouncements of this Court on the subject.[10]

The portions of the voir dire examination excerpted by the majority of the Court fall short of demonstrating a disqualification for cause for they show neither that there was such prejudice against defendant nor formation of an opinion as to his guilt as would render them less than fair and impartial jurors. The mere fact that they considered persons trained in law enforcement as generally reliable observers and not likely to jump to conclusions should not be viewed as a basis for disqualification for *actual* bias.

1.  Rule 47(f)(6), U.R.C.P.

2.  *State Bank of Beaver County v. Hollingshead,* 82 Utah 416, 25 P.2d 612 (1933).

3.  *State v. BeBee,* 110 Utah 484, 175 P.2d 478 (1946); *State v. Thorne,* 41 Utah 414, 126 P. 286 (1912); *State v. Brosie,* 24 Ariz.App. 517, 540 P.2d 136 (1975).

4.  *Balle v. Smith,* 81 Utah 179, 17 P.2d 224 (1932).

5.  Provided for by Rule 47(a), U.R.C.P.

6.  U.C.A., 1953, 77–30–18(2).

7.  U.C.A., 1953, 77–30–21.

8.  *Territory v. Hopt,* 3 Utah 396, 4 P. 250 (1884), reversed on another point, 110 U.S. 574, 4 S.Ct. 202, 28 L.Ed. 262 (1884).

9.  Supra, footnote 7.

10. See *State v. Brooks,* Utah, 563 P.2d 799 (1977), *State v. Moore,* Utah, 562 P.2d 629 (1977), and *Crawford v. Manning,* Utah, 542 P.2d 1091 (1975), cited by the majority.

A comparable situation is presented in cases where doctors, dentists, architects, or other professionals (experts) might be called as witnesses. Certainly it is not an ipso facto disqualification if a prospective juror acknowledges that he might be impressed by the testimony of such persons professionally trained in their calling and that they would give due consideration to their expertise should they be called as witnesses. On the contrary, such a response is indicative of the quality of jurors so sought after to assist in the search for truth.

I agree that the law to be applied in the instant case is as was aptly stated in *Reynolds v. United States*.[11] However, the single sentence therein (cited by the majority) that "The theory of the law is that a juror who has formed an opinion cannot be impartial," is but a broad statement of the general law and thus it is without absolute or unqualified application. *Reynolds* recognized the limitations of the aforementioned rule and in the next succeeding sentences had this to say:

. . . *Every opinion which he may entertain need not necessarily have that effect.* In these days of newspaper enterprise and universal education, every case of public interest is almost, as a matter of necessity, brought to the attention of all the intelligent people in the vicinity, and scarcely any one can be found among those best fitted for jurors who has not read or heard of it, and who has not some impression or some opinion in respect to its merits. *It is clear, therefore, that upon the trial of the issue of fact raised by a challenge for such cause the court will practically be called upon to determine whether the nature and strength of the opinion formed are such as in law necessarily to raise the presumption of partiality.* The question thus presented is one of mixed law and fact, and to be tried, as far as the facts are concerned, like any other issue of that

character, upon the evidence. *The finding of the trial court upon that issue ought not to be set aside by a reviewing court, unless the error is manifest.* No less stringent rules should be applied by the reviewing court in such a case than those which govern in the consideration of motions for new trial because the verdict is against the evidence. *It must be made clearly to appear that upon the evidence the court ought to have found the juror had formed such an opinion that he could not in law be deemed impartial. The case must be one in which it is manifest the law left nothing to the "conscience or discretion" of the court.* [Emphasis added.]

Only with considerable naiveté can it be supposed that an intelligent juror could be found who has not "formed an opinion" about numerous things. To engage in such a search would be foolhardy.

The court in *Reynolds* also observed that ". . . if hypothetical only, the partiality is not so manifest as to necessarily set the juror aside."[12] In the instant case the "partiality" or "opinion" that was expressed was clearly in the abstract, based upon a hypothetical set of circumstances, viz., that a professionally trained person commands a certain modicum of respect. Generally speaking, a prospective juror would be far less than candid to state otherwise.

It is significant that the defendant does not now assert that the jury, as it was ultimately impaneled, was in any way biased or prejudiced against him. His only assertion of error is that the court caused him to "waste" two peremptory challenges. In the absence of *any* showing of prejudice, defendant's ipse dixit of "waste" should not be accepted.

A further critical aspect of this case is that the defendant did not seek a new trial[13] as he was obliged to do if he had in fact been aggrieved.[14] Consequently, the trial

---

11. 98 U.S. 145, 25 L.Ed. 244 (1878).

12. Ibid. at p. 155.

13. Although he did move in arrest of judgment in an apparent attempt to gain *acquittal*.

14. See 24 C.J.S. Criminal Law § 1693(2), p. 1251.

court was not afforded an opportunity to consider any claimed error.[15]

The defendant makes no contention as to his innocence and only challenges the sufficiency of the evidence as not being corroborated. Corroboration was, of course, unnecessary under the facts of this case. The record contains substantial, believable evidence to support the judgment of conviction and affords no basis for a conclusion that a new trial might result in an acquittal.

I would affirm the conviction and judgment of the trial court.

CROCKETT, C. J., concurs in the views expressed in the opinion of HALL, J.

---

15. That such a claim of error raised for the first time on appeal is not generally reviewable see *State v. Kelsey*, Utah, 532 P.2d 1001 (1975).