STATE of Utah, Plaintiff and Appellee,

v.

Greg N. OLIVER, Defendant
and Appellant.

No. 890625–CA.

Court of Appeals of Utah.

Sept. 26, 1991.

Elizabeth Holbrook, Salt Lake Legal Defender Ass'n, Salt Lake City, for defendant and appellant.

R. Paul Van Dam, State Atty. Gen., Marian Decker, Asst. Atty. Gen., for plaintiff-appellee.

Before BENCH, GREENWOOD and JACKSON, JJ.

## OPINION

GREENWOOD, Judge:

Appellant Greg N. Oliver appeals his conviction of burglary, a second degree felony, in violation of Utah Code Ann. § 76-6-202 (1989) and theft, a third degree felony, in violation of Utah Code Ann. § 76-6-404 (1989) on the bases that the trial court erred in denying his motion for a continuance and that admissible evidence supports only a misdemeanor theft conviction. We affirm in part, and reverse and remand in part.

## BACKGROUND

At 2:30 p.m. on January 7, 1989, John Spielmans returned home from a basketball game with his son. He noticed that the side door to his garage, which was usually locked, was open. Spielmans went into the garage to investigate. He then saw a man dressed in a dark cap and dark jacket jump over a chain link fence ten to twelve feet away and run north. Spielmans began chasing the man, but lost sight of him. Spielmans returned home and noticed that the front door to his house was dented and that it appeared someone had been inside the house. He called 911 and waited outside for the police to arrive. While he was waiting, one of Spielmans's neighbors called his attention to a man who was leaning against a wooden fence across the street. Noting the similarity of that person's clothing to that of the man he had observed running away, Spielmans concluded it was the same person. Spielmans walked toward the man, who began running toward a car parked nearby. The man got into the car and looked over his left shoulder as Spielmans approached him and said, "It wasn't me, man" before driving off. Spielmans again called 911 and described the car, including the license plate number and the direction of travel.

When Deputy Matthews arrived to investigate, Spielmans told him that a watch, a gold ring, four one-dollar bills and four or five gold Canadian coins were missing from his house. Deputy Matthews also spoke with Spielmans's neighbor who saw the man run across his front yard, climb into the parked car and speed away when Spielmans approached him.

Deputy Matthews ran a computer check on the license plate of the car and obtained the vehicle owner's name and address. He then went to the vicinity of that address to investigate further. He saw a man fitting the description that Spielmans had given, exit the vehicle owner's residence.

Based on his own observations, the license plate number of the car and the descriptions given by both Spielmans and his neighbor, Deputy Matthews obtained a picture of defendant, Greg N. Oliver, from the police records division. The next day, he returned to Spielmans's home with the photo of Oliver and showed it to Spielmans, advising him that he had reason to believe that Oliver was the same person Spielmans described. Spielmans identified Oliver as the man he had seen.

Three days after the incident, Deputy Matthews assembled a photo spread, including the picture of Oliver and pictures of five other men. He showed the photo spread to Spielmans, who again identified Oliver as the suspect. Deputy Matthews also showed the photo spread to three of Spielmans's neighbors, two of whom identified Oliver as the person they had observed the day of the incident.

Oliver was arrested and charged with one count of burglary, a second degree felony and one count of theft, a third degree felony.

The trial judge granted two continuances prior to the case actually being tried. At the final pretrial conference, on August 28, 1989, Oliver's attorney told the trial judge that he was ready to proceed to trial and agreed to a trial date of September 5, 1989.

After the pretrial conference, Oliver entered into plea negotiations with the State. The trial judge's clerk told both the State and Oliver's attorney, however, to prepare as if they were going to trial as scheduled. The night before trial, Oliver agreed to the State's plea proposal and decided that he would enter a guilty plea in the morning rather than go to trial. The next morning, however, Oliver changed his mind and decided that he wanted to go to trial. Oliver's attorney moved for a one day continuance, stating that he needed more time to formally prepare for trial. The trial judge denied this motion. Oliver was convicted by a jury of one count of second degree burglary and one count of third degree theft.

## ISSUES

On appeal Oliver argues that: (1) the trial court's denial of his motion for a continuance denied him due process of law; (2) the trial court's denial of his motion for a continuance denied him effective assistance of counsel; and (3) admissible evidence supports only a class A misdemeanor theft conviction.

## ANALYSIS

### Due Process

Oliver argues that the trial court's denial of his motion for a one day continuance violated his right to due process because it forced his counsel to proceed to trial without being adequately prepared. Oliver asserts that his attorney did not conduct any formal trial preparation after Oliver decided to plead guilty. Consequently, when he changed his mind the next morning and decided he wanted to go to trial, Oliver's counsel was not sufficiently prepared. Oliver claims that had his attorney had one more day to prepare for trial, he would have been better prepared to: (1) support Oliver's testimony regarding his prior conviction based on misidentification; (2) expose weaknesses in the eyewitness identification testimony; and (3) support Oliver's assertions concerning possible police misconduct involved in the photo show up.

The grant or denial of a continuance is within the discretion of the trial court. *State v. Humpherys*, 707 P.2d 109, 109 (Utah 1985) (per curiam); *State v. Creviston*, 646 P.2d 750, 752 (Utah 1982); *State v. Moosman*, 542 P.2d 1093, 1094 (Utah 1975). This court will not reverse the trial court's decision absent a clear abuse of discretion. *Id.*

When moving for a continuance, a party must show that denial of the motion will prevent the party from obtaining material and admissible evidence, that any additional witnesses it seeks can be produced within a reasonable time, and that it has exercised due diligence in preparing for the case before requesting the continuance. *State v. Linden*, 761 P.2d 1386, 1387 (Utah 1988). Absent such showing, the trial court does not abuse its discretion if it denies the motion. *Id.* We are also persuaded by Washington precedent, that on appeal, the moving party must show that it was materially prejudiced by the court's denial of the continuance or that the trial result would have been different had the continuance been granted. *State v. Barker*, 35 Wash.App. 388, 667 P.2d 108, 114 (1983).

Oliver has failed to make the necessary showing required by these cases. Oliver's counsel did not allege that there were any witnesses or evidence that he needed to obtain or that would have been available had the continuance been granted. Nor did he state specifically what he needed to do, or how or why Oliver would be prejudiced if he was denied the extra day. Defense counsel simply requested time to conduct more formal trial preparation.

Oliver's counsel also failed to demonstrate that he exercised due diligence before requesting the continuance. Oliver's attorney represented Oliver at an arrest warrant hearing, the pretrial conference

and throughout plea negotiations with the State. At the pretrial conference, eight days before trial, defense counsel told the trial judge that he was prepared to proceed to trial. After the pretrial, the trial judge instructed his court clerk to notify both the State and defense counsel that, although Oliver and the State were engaged in plea negotiations, they should prepare as if they were going to trial anyway. The trial judge stated that Oliver was having a hard time deciding whether or not he would accept the State's plea bargain and that no one would know until the day of trial whether or not he would actually enter a plea. In denying the motion, the trial judge stated:

> All counsel, prosecution and defense counsel were told that given circumstances, as I understand them, that Mr. Oliver could not make up his mind, that everyone needed to proceed, as if we were going to trial, and the responses we got from the respective offices of prosecution and defense is that they would act accordingly.

On appeal, Oliver has failed to show that he was materially prejudiced by denial of this motion. The trial lasted two days, instead of only one, as scheduled. Therefore, Oliver's counsel had the evening of the first day and overnight to further prepare before the State's case had been fully presented. In essence, because the trial went two days, Oliver's counsel was afforded the time to prepare that he requested and which he would have had if the continuance had been granted. All of the State's witnesses were subject to recall by defense counsel and the trial judge found that defense counsel took full advantage of the opportunity to cross-examine each of them. Also, because the motion was denied and the parties had to proceed to trial, one of the State's witnesses was unable to appear. At the end of the State's case, the trial judge made the following statement regarding his denial of Oliver's motion for a continuance:

> Each of the witnesses who testified yesterday it seemed to me, that there was full availability of cross-examination by [defense counsel] and he took advan-

tage of that ... I want to make sure the record is very clear that full opportunity had been made available to the defendant, to the witnesses ... and in fact, since the trial did not conclude in the first day, that there has been extra time to prepare, extra time to do whatever is necessary....

> Furthermore, it appears to me that there may have been some benefit in the sense that this witness you mentioned, Mrs. Lehaman, is not available.

Further, Oliver has not shown that the trial result would have been different had the continuance been granted. The record shows that Oliver's counsel explored all of the areas Oliver now complains of. Defense counsel questioned Oliver about his previous conviction based on eye witness misidentification, and again brought the prior misidentification to the jury's attention during closing argument. He cross-examined each eyewitness who testified and addressed the weaknesses of each person's testimony at length in his closing argument. Defense counsel also cross-examined Deputy Matthews about his investigation and the photo show up he conducted with at least one of the eyewitnesses.

Oliver did not tell his attorney that he had decided to plead guilty until the night before trial. Any formal trial preparation should have been done before that time. Oliver does not show that he was materially prejudiced by the court's denial of this motion or that the trial would have been different had the continuance been granted. Therefore, we find that the trial court did not abuse its discretion in denying the motion for a continuance and that such denial did not deprive Oliver of due process.

*Ineffective Assistance of Counsel*

Oliver claims that the trial court's denial of his motion for a one day continuance denied him effective assistance of counsel. As in his due process argument, Oliver contends that his counsel was not sufficiently prepared to: (1) support Oliver's testimony regarding his prior conviction based on misidentification; (2) expose

weaknesses in the eyewitness identification testimony; or (3) support Oliver's assertions concerning possible police misconduct involved in the photo show up. Oliver argues that his counsel's failure to more fully explore these issues constitutes ineffective assistance of counsel.

■ In *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court established a two-part test for determining whether a criminal defendant's sixth amendment right to effective assistance of counsel has been denied. The defendant must show: (1) that his or her counsel's performance was deficient; and (2) that counsel's performance prejudiced the defendant. *Id.* at 687, 104 S.Ct. at 2064. The defendant must prove both parts of the test in order to prevail. *Id.*

■ An attorney's performance is deficient when it falls below the objective standard of reasonableness. *Id.* at 688, 104 S.Ct. at 2064–65; *State v. Templin,* 805 P.2d 182, 186 (Utah 1990); *State v. Carter,* 776 P.2d 886, 893 (Utah 1989). The defendant must point to specific instances in the record which, under the circumstances, show that counsel's performance was deficient. *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066; *Templin,* 805 P.2d at 186; *State v. Hoyt,* 806 P.2d 204, 212 (Utah App.1991).

■ In assessing trial counsel's performance, an appellate court must " 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance....' " *Templin,* 805 P.2d at 186 (quoting *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065).

■ Although Oliver points to three specific areas in which he claims his counsel should have been more prepared, the record, as discussed regarding Oliver's due process claims, establishes that his attor-

ney presented evidence and argument to the jury in all of these areas. Any additional evidence would have been cumulative. Oliver has failed to demonstrate how his counsel's performance was deficient and therefore we need not address whether Oliver was prejudiced by such performance. We conclude that Oliver was not denied effective assistance of counsel.

*Admissibility of Evidence*

Oliver argues that the State failed to introduce admissible evidence establishing that the value of the stolen property totalled over $250 as required for a third degree felony theft conviction under Utah Code Ann. § 76–6–412(1)(b) (1989).[1]

Spielmans reported that a watch, a ring, four one-dollar bills and four or five Canadian coins were stolen from his home. At trial, Spielmans testified that the watch was worth one hundred twenty-five dollars, the four dollar bills were worth four dollars and that the total value of the coins was approximately three dollars and seventy-five cents. When questioned about the ring's value, the following exchange occurred:

Q. [THE PROSECUTOR]: And at the time that the ring was taken, did you have an opinion as to the value of that ring?

A. [SPIELMANS]: I did have, and whatever that opinion was is reflected in the police report. I don't recall.

Q: You do not recall?

A: No.

Q: Is there anything that would help refresh your recollection?

A: Nothing other than the police report, I believe.

. . . .

Q: I'm asking you if looking at the police report refreshes your recollection as to the ring.

A: As to the ring?

1. Utah Code Ann. § 76–6–412(1) (1989) provides:

(1) Theft of property and services as provided in this chapter shall be punishable:

. . . . .

(b) as a felony of the third degree if the:

(i) value of the property or services is more than $250 but not more than $1000;

Q: As to the ring. Thank you.

A: I'm sure it reflects what I said. I just don't recall.

. . . .

Q: . . . Having looked at this report, this police report, does that refresh your recollection as to how you valued the ring at that time?

A: Yes.

Q: Okay. What was the value you placed on that ring at that time?

A: I really can't recall. It states $200 on there. That's what I said. If it says $200 on there, that's what I said.

The police report was not introduced into evidence.

Oliver claims that Spielmans's testimony, based on the police report, that the ring was worth $200 is inadmissible because Spielmans lacked personal knowledge of the value and his memory was not refreshed by the police report. Therefore, Oliver contends that the State proved a total value of less than $250 for the stolen property, which constitutes a class A misdemeanor under § 76–6–412(1)(c) [2], rather than a felony.

The State argues that the evidence presented is sufficient to sustain the felony conviction. Before we can assess whether the evidence is sufficient to support a felony theft conviction, we must first determine whether the evidence that the ring was worth $200 was properly admitted, as that evidence is necessary for a felony conviction.

■ In reviewing a trial court's decision to admit evidence, we will not reverse that ruling unless a substantial right of the party has been affected. *State v. Morgan,* 813 P.2d 1207, 1209 (Utah App.1991) (citing *Salt Lake City, v. Holtman,* 806 P.2d 235, 237 (Utah App.1991)); Utah R.Evid. 103(a).

---

**2.** Utah Code Ann. § 76–6–412(1)(c) (1989) provides:

(1) Theft of property and services as provided in this shall be punishable:

(c) as a class A misdemeanor if the value of the property stolen was more than $100 but

Under Utah Rule of Evidence 602, a witness may only testify about matters of which the witness has personal knowledge. A witness may use a writing to refresh his or her memory for the purpose of testifying. Utah R.Evid. 612(1).

■ It is evident from the trial transcript that Spielmans had no independent knowledge or memory of the value of the ring, nor was his memory refreshed after looking at the police report. He had no present personal knowledge of the ring's value and, therefore, his testimony concerning the value is inadmissible. We find that admissible evidence supports only a class A misdemeanor theft conviction. Therefore, we reverse and remand on the felony theft conviction issue.

## CONCLUSION

For the reasons stated above, we affirm the trial court's denial of the motion for a continuance, and reverse and remand on the felony theft conviction for proceedings consistent with this opinion.

BENCH and JACKSON, JJ., concur.